Hillsborough-southern judicial district
No. 92-772

## *In re* GINA D.

July 22, 1994

698

*Jeffrey R. Howard*, attorney general (*Nancy J. Smith*, assistant attorney general, on the brief and orally), for the State.

*McKenney & Perreault, P.C.*, of Amherst (*Laurie S. Perreault* and *Robert V. McKenney* on the brief, and *Mr. McKenney* orally), for Jon D.

*Bolton & Kiely, P.A.*, of Nashua (*Steven A. Bolton* and *Michael J. Kiely* on the brief, and *Mr. Bolton* orally), for Susan D.

BROCK, C.J. The respondent, Jon D., appeals the Superior Court's (*Dalianis*, J.) finding pursuant to RSA chapter 169-C that he sexually abused his daughter, Gina D. Relying on our recent decision in *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (1993), he argues that the superior court erroneously based its finding on insufficient evidence because the expert psychological testimony concluding that Gina had been sexually abused was unreliable. In addition, he contends that the superior court improperly reviewed the district court file as part of the *de novo* trial, and drew an improper inference from his decision not to testify, thus burdening his right against self-incrimination. Because the superior court's decision was based on erroneously admitted evidence, we reverse and remand for further proceedings.

When Gina D. was two years and ten months old, her mother, Susan D., brought her to Ann Bastille, a child and adolescent therapist. Bastille holds a master's degree in counseling and psychotherapy and has acquired specialized knowledge in the evaluation and treatment of child sexual abuse. Gina's mother was concerned about the effects on Gina of her divorce from the respondent, including the custody proceedings. She reported that Gina was engaging in sexualized play and was experiencing nightmares, behavioral difficulties, and mood swings. Gina's mother also told Bastille that another family member had made allegations of sexual abuse against the respondent. Because of the possibility of sexual abuse, Bastille first began an evaluation to "rule out" the possibility of sexual abuse as the cause of Gina's reported problems. Bastille had received training with regard to sexual abuse allegations in child custody disputes, and she took care to discount Gina's mother's reports and to conduct the major evaluation sessions with Gina without her mother being present.

Bastille eventually came to the conclusion that the respondent had sexually abused Gina. Her conclusion was based largely on verbal and nonverbal disclosures Gina made during the course of Bastille's evaluation, but was bolstered by Bastille's observations of Gina's behavior and emotions. Bastille reported Gina's disclosures to the division for children and youth services (the division). The division then filed a petition in the Nashua District Court (*Howorth*, J.), pursuant to RSA chapter 169-C, alleging that the respondent had sexually abused Gina. Following a hearing, the court found that Gina had been abused within the meaning of RSA chapter 169-C and that the respondent was the perpetrator. He appealed to the superior court for a *de novo* hearing. *See* RSA 169-C:28 (1990).

The superior court heard testimony on behalf of the State from Gina's mother, Bastille, and Barbara Blue, the child protective services worker who filed the abuse petition. Christopher Garner, Gina's guardian ad litem in her parents' divorce action, and Wilfred Derby, a clinical forensic psychologist, testified for the respondent, who did not testify. Like the district court, the superior court concluded that the respondent had sexually abused Gina. The respondent appealed.

The first issue we address is whether the superior court properly admitted and relied on Bastille's testimony. At the superior court trial, the respondent objected to Bastille's qualifications to testify as an expert in the field of child sexual abuse. The respondent's argument on appeal is based on our holding in *Cressey*, which was not decided until after the respondent filed his notice of appeal. Because the question of the reliability of Bastille's expert opinion was sufficiently raised below and the parties briefed and argued the issue citing *Cressey*, we will review the superior court's ruling in light of our holding in *Cressey*.

Expert testimony must meet a threshold level of reliability to be admissible under New Hampshire Rule of Evidence 702. *Cressey*, 137 N.H. at 405, 628 A.2d at 698. Under Rule 702, a psychologist's expert opinion is not sufficiently reliable to be admitted in a criminal trial as evidence that alleged victims have been sexually abused. *Cressey*, 137 N.H. at 407, 628 A.2d at 699; *State v. Chamberlain*, 137 N.H. 414, 417, 628 A.2d 704, 706 (1993); *State v. Luce*, 137 N.H. 419, 421, 628 A.2d 707, 709 (1993). The present case, however, is a civil proceeding, not a criminal matter, *see* RSA 169-C:18, I (1990). In addition, the New Hampshire Rules of Evidence do not apply to abuse and neglect proceedings; instead, the court "may admit evidence which it considers relevant and material." RSA 169-C:12, :18, III (1990). Consequently, the evidentiary holding in *Cressey* does not directly control the issue of Bastille's testimony in this case. Nevertheless, we must determine whether the expert opinion testimony by Bastille was relevant and material in light of our conclusion in *Cressey* that "a psychological evaluation of a potentially abused child does not present the verifiable results and logical conclusions that work to ensure the reliability required in the solemn matter of a criminal trial." *Cressey*, 137 N.H. at 407, 628 A.2d at 699.

Because abuse proceedings are not governed by the New Hampshire Rules of Evidence, we look to New Hampshire common law of evidence for guidance in analyzing the materiality and relevancy of the challenged testimony. To be relevant, evidence must

have probative value that logically supports a resulting conclusion. *Goldsmith v. Kingsford*, 92 N.H. 442, 448, 32 A.2d 810, 814 (1943). To be material, evidence must be offered to prove a fact in issue. *Welch v. Bergeron*, 115 N.H. 179, 182, 337 A.2d 341, 344 (1975). Therefore, "testimony must have some tendency to establish a fact of consequence to the determination of the action" in order to be admissible into evidence. *Id.* Opinion testimony is relevant and material if the witness is qualified to give the opinion offered and if the opinion will aid the trier of fact in the search for the truth. *See Peters v. McNally*, 123 N.H. 438, 440, 462 A.2d 119, 121 (1983); *Rau v. Stores*, 97 N.H. 490, 494–95, 92 A.2d 921, 924 (1952).

At the appeal hearing, Bastille testified about her observations, evaluations, and conclusions concerning the possibility that Gina had been sexually abused. Bastille stated that Gina told her, "'My daddy hurts my back,'" and that "her daddy hurts her with a funny-looking stick." She testified about a session when Gina talked about her daddy hurting her and Bastille asked her to show on an anatomical drawing where her daddy hurts her with the "funny-looking stick." The anatomical drawing showed the back of a young girl on one side and the front view on the other side. On the back view of the girl, Gina circled her buttocks area and part of her upper back. After marking the back view, Gina spontaneously turned over the paper to the front view and made marks in the genital area and the area of the breasts. She then began scribbling on the paper very hard and said, "'He hurts me all over.'"

■ Bastille's testimony about Gina's disclosures and her own observations of Gina's behavior is merely factual and was not generated by her particular expertise. Her factual testimony is both relevant and material to the question of whether Gina was sexually abused by her father, the respondent. Absent other infirmities that have not been demonstrated on appeal, her factual testimony was properly admitted under RSA 169-C:12.

■ Bastille's expert opinion that Gina was sexually abused by her father, however, must assist the court in its search for the truth to be relevant and admissible. Relying on *Cressey*, the respondent contends that Bastille's conclusion was unreliable, and therefore inadmissible, because it lacked a sufficient scientific basis. Generally, the basis for an expert opinion is tested through cross-examination of the witness, and objections may affect the weight of the testimony but do not render it inadmissible. *Tullgren v. Phil Lamoy Realty Corp.*, 125 N.H. 604, 609–10, 484 A.2d 1144, 1148 (1984). Expert psy-

chological evidence must be based on factors in addition to the child's accounts of abuse; otherwise, the testimony is inadmissible as merely an opinion of the child's credibility. *Cressey*, 137 N.H. at 407, 628 A.2d at 700; *see State v. Huard*, 138 N.H. 256, 259, 638 A.2d 787, 789 (1994). In *Cressey*, however, this court decided that a thorough cross-examination of the psychologist was likely to be ineffective in exposing any infirmity in the interpretive component of an expert opinion that a child had been sexually abused. *Cressey*, 137 N.H. at 410, 628 A.2d at 701. "The methodology used in the psychological evaluations makes [the psychologist's] presentation of evidence effectively beyond reproach." *Id.*

Bastille testified that her conclusion that Gina had been sexually abused by the respondent was based on the following factors:

> "[Gina's] disclosure and the ongoing emotional disturbance that [Bastille] saw in the office at times, behavioral difficulties when any kind of even nondirective questioning was used, the—the anxiety, the—especially the extensive play and talk around issues of nightmares, which certainly appeared very genuine."

Gina's symptoms, according to Bastille, were indicators that Gina had been traumatized. Based on Gina's disclosures, Bastille concluded that the traumatization was due to sexual abuse. Bastille used a prepared chart showing the signs and symptoms of child sexual abuse in evaluating Gina. She explained that based on her training she was able to identify "victimization themes" in Gina's nightmares and drawings and in Gina's explanation of her drawing. Bastille also drew significance from the fact that Gina had included "sexualized parts" in her self-portrait because she did not include those parts on her other drawings of females. Further, she ruled out the possibility that Gina had been "programmed" by Susan to allege that the respondent sexually abused her based on the following "wide range of indicators":

> "Gina disclosed or had indicators of sexual abuse in a wide range of ways in terms of behavioral, what she had done in the diagnostic drawings, her disclosure in terms of having marked that drawing rather than having it be just a verbal disclosure, the—certainly, the richness with regard to her nightmare content and continuing themes of victimization and being hurt—being hurt in the areas of her bum."

Bastille believed that she had "ruled out" other possible perpetrators of the abuse, other than the respondent, because "to the best

that I could assess, 'Daddy' was the daddy that she visited on the weekend." During cross examination, Bastille explained that her conclusions were not based on one single factor but that each indicator was "a piece of a total puzzle in doing the evaluation." Although individual factors could be interpreted differently, together they led Bastille to a conclusion of sexual abuse by the respondent.

Dr. Wilfred Derby, appearing on behalf of the respondent, testified that the indicators listed in the chart relied on by Bastille were not diagnostic of child abuse and that there are no indicators of child sexual abuse other than possibly venereal disease. Instead, he said, the kinds of symptoms Bastille reportedly observed in Gina show emotional problems. He further testified that at this time there is no research which supports relying on the interpretation of a child's drawings to diagnose sexual abuse. He disputed Bastille's qualifications to interpret Gina's dreams and characterized her interpretations as "almost in the realm of fortune telling." Finally, he noted that Bastille's sessions with Gina were not taped so that there was no way for anyone else to know what happened and to assess the validity of her observations and methods.

■ Experts in the field of behavioral science dispute the reliability and validity of diagnoses of sexual abuse based on behavioral characteristics of the child as is indicated by the striking conflict between the expert witnesses in this case. *See Cressey*, 137 N.H. at 408, 628 A.2d at 700; *State v. Michaels*, 498 A.2d 489, 499–500 (N.J. Super. Ct. App. Div. 1993); *State v. Jones*, 863 P.2d 85, 98 (Wash. App. 1993); Myers *et al.*, *Expert Testimony in Child Sexual Abuse Litigation*, 68 NEB. L. REV. 1, 69–70 (1989). If Bastille's evaluation and diagnosis were presented as novel scientific evidence, it would not meet either prong of the test for admissibility articulated in *State v. Vandebogart (DNA)*, 136 N.H. 365, 376, 616 A.2d 483, 490 (1992), as neither the principle nor the techniques of diagnosing sexual abuse used by Bastille have been generally accepted by behavioral scientists.

■ Bastille based her disputed diagnosis on her evaluation of a variety of factors that depended on her interpretation of Gina's drawings, nightmares, and behavior. Despite being challenged on cross-examination about her methods and conclusion, Bastille defended her position based on her evaluation of all the pieces of "the puzzle." An opinion that is impenetrable on cross-examination due to the unverifiable methodology of the expert witness in arriving at the conclusion is not helpful to the court in its search for the truth. *See*

*Cressey*, 137 N.H. at 410, 628 A.2d at 701; *State v. Campbell*, 127 N.H. 112, 116, 498 A.2d 330, 333 (1985). If the court, as the trier of fact, cannot determine and assess the bases for the expert's opinion, it also cannot accord the proper weight, if any, to the testimony. In these circumstances, we hold that the opinion testimony given by Ann Bastille that Gina had been sexually abused by the respondent was not sufficiently probative to meet the standard of assisting the court as the trier of fact. Consequently, Bastille's opinion that Gina was sexually abused by the respondent was not relevant, and the trial court erred as a matter of law in admitting and relying on Bastille's opinion.

■ We are not persuaded that the purpose of an abuse proceeding under RSA chapter 169-C, as contrasted with the purpose of a criminal trial on allegations of sexual abuse of a child, justifies using expert opinion testimony of a diagnosis of sexual abuse in an abuse proceeding. Although RSA chapter 169-C "is designed to protect children, not punish parents," *In re Heather D.*, 121 N.H. 547, 550, 431 A.2d 789, 791 (1981), an abuse proceeding undertakes a solemn decision-making process as does a criminal trial on allegations of sexual abuse. A child's and his or her family's life may be seriously and permanently affected by the court's determination in an abuse proceeding. *See In re Tracy M.*, 137 N.H. 119, 123–24, 624 A.2d 963, 965–66 (1993). The different purposes of an abuse proceeding and a criminal trial are properly served, in part, by their differing standards of proof. In an abuse proceeding, the State must prove the allegations in the petition by a preponderance of the evidence, RSA 169-C:13 (1990), rather than beyond a reasonable doubt, RSA 625:10 (1986). Also, the more relaxed evidentiary standard in abuse proceedings under RSA 169-C:12 allows a broader range of evidence than in a criminal trial, although evidence must meet the relevance and materiality standard. Finally, although abuse proceedings are decided by the court, RSA 169-C:18, :28 (1990), rather than by a jury as is generally true in a criminal trial, opinion evidence nevertheless must be material and relevant. Bastille's opinion testimony did not meet the necessary standard.

■ As in *Cressey*, we caution that the holding in this case does not preclude all opinion testimony from psychologists or therapists in abuse and neglect proceedings. Expert testimony based on psychological evaluation or other behavioral science expertise may be helpful to the court by providing information about a child's physical and cognitive development and behavior. In particular, such testi-

mony may show the presence of age-inappropriate sexual behavior and knowledge, obsession with sexual abuse, and may explain behaviors that would otherwise suggest that the child lied in making allegations of abuse. *Cressey*, 137 N.H. at 410, 628 A.2d at 702; *Chamberlain*, 137 N.H. at 417, 628 A.2d at 706. In addition, we recognize that the behavioral science fields are not static and that research may produce new information and consensus in the scientific community about diagnosing symptoms in sexually abused children.

We will uphold the findings and rulings of the trial court unless they are unsupported by the evidence or are legally erroneous. *In re Tracy M.*, 137 N.H. at 125, 624 A.2d at 966. In assessing the sufficiency of the evidence to support the trial court's findings, however, we must review all of the evidence presented to the trial court and "determine whether a reasonable person could have found as the trial judge did." *Id.* Although Gina's mother's testimony is suspect because of her interest in the custody dispute, we cannot say that no reasonable person would have relied on it. Barbara Blue, the child protective services worker, testified that a pediatrician who examined Gina found no physical evidence of sexual abuse although she also testified that a lack of physical evidence is not unusual in sexual abuse cases. Otherwise, Blue's testimony was dependent on Ann Bastille's evaluation.

The guardian ad litem's testimony reported his observations of Gina, her mother, and the respondent. He testified that Gina's mother made a variety of "wild and exaggerated allegations" about the respondent and his family that the guardian ad litem was not able to confirm or repudiate. He described his visit at the respondent's house, observing him with Gina for two hours, and noted that Gina was very open and verbal and seemed happy. He stated that he was concerned "about the way [Gina's mother] has handled the whole divorce from the beginning and the way events seem to coincidentally fit into an abuse-and-neglect case for some benefit at the divorce court level."

Dr. Derby's testimony seriously undermined the reliability and validity of Bastille's interpretations and opinions. He did not examine Gina, however, as Bastille did. Consequently, we cannot say that no reasonable person could have found, as the superior court did, that the evidence at trial supported a finding that Gina had been abused by her father, the respondent.

In making its decision, however, the superior court relied heavily on Bastille's opinion that Gina had been sexually abused by the respondent. The court entirely discounted Gina's mother's testimony

except for foundational matters and found that Barbara Blue's testimony did not add anything of significance. The court noted that the guardian ad litem thought that Gina's mother had suggested the allegations of sexual abuse to Gina, and acknowledged Dr. Derby's testimony challenging Bastille's credentials and some of the bases for her conclusions. Finding that "the substance of Ann Bastille's testimony bears up under scrutiny," the superior court ruled that Gina had been sexually abused within the meaning of the statute.

■ As we have explained, Bastille's opinion testimony that Gina had been sexually abused by the respondent was not sufficiently reliable to be relevant. Consequently, the court's reliance on Bastille's opinion was an error of law. Based on a review of the record and the importance accorded by the superior court to Bastille's testimony, we do not find that the error was harmless. *Cf. In re Kristopher B.*, 125 N.H. 678, 684, 486 A.2d 277, 282 (1984) (finding erroneously admitted evidence harmless due to sufficiency of other evidence to support the court's ruling). Therefore, we reverse and remand for further proceedings that are consistent with this opinion. We find no merit in the other issues raised on appeal.

*Reversed and remanded.*

JOHNSON, J., and HORTON, J., dissented; the others concurred.

JOHNSON, J., dissenting: Because I believe the issue of reliability in *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (1993), was confined to a criminal proceeding decided by a jury, I respectfully dissent. I am of the firm opinion that in abuse and neglect proceedings our superior court can separate the wheat from the chaff in accepting or rejecting an expert's conclusion.

New Hampshire has historically had one of the most liberal rules in the country as to the qualification of an expert and the acceptance of the expert's conclusion as to an ultimate question of fact. *See Dowling v. Shattuck*, 91 N.H. 234, 236, 17 A.2d 529, 532 (1941); *Higgins v. Carroll*, 86 N.H. 312, 315, 167 A. 270, 272 (1933). I see no reason, in a civil proceeding such as this where no prison term is at stake, to vary from our longstanding rules of accepting into evidence an expert's opinion.

The first issue to address is whether Bastille's testimony was reliable enough to support the superior court's finding of sexual abuse. Jon D.'s main argument is that Bastille's testimony is similar to the testimony held unreliable in *Cressey* and that Bastille's testimony should therefore be held unreliable as well. I disagree with Jon D.'s

initial assumption that the testimonies are analogous, but even if they were identical, the differences between the two cases—one civil, one criminal—would make the *Cressey* holding inapplicable here. First, the New Hampshire Rules of Evidence do not apply to abuse and neglect proceedings. RSA 169-C:12 (1990). They do, of course, apply to criminal trials, N.H. R. Ev. 1101(b), and this court's holding in *Cressey* was based on the requirements of Rule 702, relating to expert witness testimony. *Cressey*, 137 N.H. at 404–05, 628 A.2d at 698. RSA chapter 169-C contains no provision comparable to Rule 702. Instead, RSA 169-C:12 merely states: "In any hearing under this chapter, the court *shall not* be bound by the technical rules of evidence and *may admit evidence which it considers relevant and material*." (Emphasis added.) *See* RSA 169-C:18, III (1990).

Second, the evidence in an abuse and neglect hearing is heard by a judge, not a jury. *See* RSA 169-C:18. This court's holding in *Cressey* was in part based on

> "the potential risks that a jury may disproportionately defer to the statements of an expert if the subject area is beyond the common knowledge of the average person, and that a jury may attach extra importance to an expert's opinion simply because it is given with the air of authority that commonly accompanies an expert's testimony."

*Cressey*, 137 N.H. at 405, 628 A.2d at 698. Such concerns are absent here. *See* Myers *et al., Expert Testimony in Child Sexual Abuse Litigation*, 68 NEB. L. REV. 1, 85–86 (1989).

Third, RSA chapter 169-C "is designed to protect children, not punish parents." *In re Heather D.*, 121 N.H. 547, 550, 431 A.2d 789, 791 (1981). Jon D. may have a "liberty interest in his standing in the community and [a] constitutional interest in the parent-child relationship, both of which are stigmatized by his being adjudicated an abuser of children," *In re Tracy M.*, 137 N.H. 119, 122, 624 A.2d 963, 965 (1993), but the superior court's finding of abuse did not empower it to imprison him, *see* RSA 169-C:16, :19 (1990 & Supp. 1993). The focus of any RSA chapter 169-C proceeding is on the welfare of the child and the family unit, *see* RSA 169-C:2 (1990), not on the legal guilt of the alleged perpetrator, as in a criminal trial. *See* Myers *supra*. The differing goals of the two proceedings permit different standards for the admission of evidence. *Cf. Cressey*, 137 N.H. at 407, 628 A.2d at 699. The standard of proof, of course, is much lower in an abuse and neglect hearing than in a criminal trial. *Compare* RSA 169-C:13 (1990) (preponderance of the evidence) *with* RSA 625:10 (1986) (beyond a reasonable doubt).

In *Cressey*, this court cited with approval on several occasions a law review article written by an attorney and several social sciences professionals on the subject of expert testimony in child sexual abuse litigation. *Cressey*, 137 N.H. at 408, 410, 628 A.2d at 700, 702; Myers, *supra* at 5. The authors questioned the propriety of admitting "behavioral science testimony [in a criminal jury trial] cast in terms of a direct opinion that sexual abuse occurred." Myers, *supra* at 85. They endorsed, however, admission of such testimony in civil proceedings:

> "In civil proceedings, it is appropriate to allow qualified experts on child sexual abuse to offer direct as well as alternative forms of expert testimony relating to whether sexual abuse occurred. *Such testimony is particularly suitable and necessary in juvenile court proceedings to protect children. . . .* Protective proceedings are civil in nature, and are not designed to work a permanent disruption of the parent-child relationship. Quite the contrary, the goal of the court is to protect the child, support the family, and provide services and treatment designed to eliminate further abuse. It must be recalled that child sexual abuse is often very difficult to prove, especially when the victim is young. The juvenile court needs all the evidence that is available to enable it to protect abused children. In protective proceedings there is no jury, thus the concern that expert testimony may overawe or confuse jurors is eliminated. The judge can evaluate the worth of expert testimony on whether a child was sexually abused. *In juvenile court, the need for the evidence and the compelling interest in protecting children justify admission of expert behavioral science testimony on whether sexual abuse occurred.*"

Myers, *supra* at 85–86 (emphasis added). I find this reasoning sound and conclude that this court's holding in *Cressey* is inapplicable here.

The question then remains whether the trial court properly admitted Bastille's testimony. RSA 169-C:12 gives the court broad discretion in evidentiary matters, allowing it to "admit evidence which it considers relevant and material." Jon D. contends that Bastille's testimony was irrelevant because it was unreliable, again citing *Cressey* as authority. I agree that evidence must be reliable to be relevant, but point out that the standard of reliability set forth in *Cressey* is much higher than that required by RSA 169-C:12. In *Cressey*, this court did not consider the admissibility of the expert's testimony under a Rule 401—or any other—relevance test. Instead, this court found the evidence unreliable under Rule 702. The testimony failed

the Rule 702 reliability test because it was not based on verifiable or quantifiable test results. *Cressey*, 137 N.H. at 408–09, 628 A.2d at 699–700. "Verifiability" or "quantifiability" is not a standard embodied by RSA 169-C:12's requirement of relevance. "In this state evidence does not have to be infallible to be admissible." *State v. Hammell*, 128 N.H. 787, 790, 519 A.2d 307, 309 (1986) (quotation omitted). Rather, to be relevant, evidence need only have some tendency to make a matter at issue more or less true. *See id.* at 789, 519 A.2d at 308; *cf.* N.H. R. Ev. 401.

Under this standard, I am hard pressed to say that the superior court abused its discretion in admitting Bastille's testimony. RSA 169-C:12; *cf. Cressey*, 137 N.H. at 405, 628 A.2d at 698. Gina's verbal and nonverbal disclosures that Jon D. hurt her in sexual areas obviously had "some tendency" to establish abuse. Bastille's conclusions were based on these disclosures, as well as on Gina's emotional and behavioral manifestations. *Cf.* 1 MCCORMICK ON EVIDENCE § 185, at 776 (J.W. Strong gen. ed., 4th ed. 1992) ("A brick is not a wall."). Bastille explained that these manifestations tended to corroborate the disclosures, making it less likely that Gina had been coached into fabricating the allegations. I find nothing inherently unreliable about Bastille's analysis. The scientific community may debate the certainty of an abuse diagnosis based on such manifestations, but relevancy requires only that evidence have "some tendency" to establish abuse. The majority holds that Bastille's opinion fails this test, finding her conclusions worthless as a matter of law. I am unwilling to concur; I find her opinion logically based on a thorough evaluation of Gina, as well as on years of training and experience. *Cf. Matter of Nicole V.*, 71 N.Y.2d 112, 119–22, 518 N.E.2d 914, 916–18, 524 N.Y.S.2d 19, 22–24 (1987) (upholding trial court's admission of expert psychological testimony that alleged child victim displayed behavior consistent with sexual abuse; evidence satisfied statutory corroboration requirement in abuse and neglect proceedings); Myers, *supra* at 75 ("properly qualified professionals can determine whether a child's symptoms and behavior are consistent with sexual abuse"). Dr. Derby's disagreement with Bastille does not alter my determination: "[A] trier of fact is free to accept or reject an expert's testimony, in whole or in part, when faced with conflicting expert testimony." *Bartlett Tree Experts Co. v. Johnson*, 129 N.H. 703, 706, 532 A.2d 1373, 1374 (1987). I would affirm the superior court's admission of Bastille's testimony.

HORTON, J., dissenting: Because I believe that the issue was not properly preserved by objection at trial to the evidence in dispute, I respectfully dissent.