## Pauline B. Soutiere v. Roger A. Soutiere

[657 A.2d 206]

No. 93-451

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed February 17, 1995

*Kurt M. Hughes* of *Murdoch & Hughes*, Burlington, for Plaintiff-Appellee.

*Norman R. Blais*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant husband appeals from a final divorce order of the Chittenden Family Court, alleging error in the court's admission of expert testimony on battered-woman syndrome, and also challenging the court's property and maintenance awards in favor of plaintiff wife. We affirm.

Plaintiff and defendant married in February 1966. The parties remained together for twenty-seven years, and raised two daughters. During the marriage, defendant was the primary income-provider, working at IBM for twelve years before taking early retirement in 1992. In his last full year of employment in 1991, defendant earned over $41,300. Defendant supplemented his IBM income with work as a barber, bringing in an additional $200 to $500 a week. Defendant, age fifty-one at the time of divorce, continues to work as a barber. Although plaintiff worked as a beautician prior to marriage, at defendant's behest she stayed home and raised the parties' children. Only when the children were older did she seek work outside the home. At that time, her employment was limited by defendant's demand that she not work in any job where there would be men in the workplace. At the time of divorce, plaintiff was forty-seven years old, and had been working for six years part-time in a retail shop. In 1992, plaintiff's earnings were just over $4,300. Plaintiff does not enjoy good health, in part due to defendant's abusive treatment of her during the marriage, and this limits her ability to work.

The family court found that the parties' marital assets totalled $177,500, not including the value of defendant's IBM pension. The court also found that plaintiff and defendant had roughly equivalent credit card debt of about $6,000 and $6,550, respectively. The court awarded plaintiff 59% of the parties' property, including the marital residence, for a total value of $105,250, plus 75% of defendant's pension. Of this amount, $11,681 was attributed to defendant's arrearages in paying temporary maintenance, property taxes and unreimbursed medical bills. The court also awarded plaintiff $125 a week in permanent maintenance, or $6,500 annually.

Before analyzing defendant's claims of error, it is appropriate to address one point that appears in each claim. Defendant faults the

court because, with only minor modifications, it adopted the extensive findings of fact, conclusions and order proposed by plaintiff. This practice is specifically authorized by V.R.C.P. 52(a)(2), and made applicable to divorce proceedings by V.R.F.P. 4(a). As long as the findings reflect careful review of the evidence, they are not reversible because they are based on a party's proposals. Reporter's Notes to 1987 Amendment to V.R.C.P. 52(a). The findings here embody a thorough review of the evidence as well as consideration of each of the relevant statutory factors in determining the award of property and maintenance.

We reiterate, however, that the better practice is for the court to prepare its own findings. Proposals often have an unnecessarily adversary tone. Thus, plaintiff proposed, and the court adopted, a conclusion that read, "There are not enough assets in the entire marital estate to compensate the Plaintiff adequately for the Defendant's behavior." Defendant cites this sentence as proof that the court intended a one-sided property award to punish defendant. The reality is different, as set out below, but the language chosen provides support for defendant's complaint.

Defendant first challenges the court's allowance of expert testimony concerning plaintiff's affliction with a version of post-traumatic stress disorder (PTSD), commonly known in this context as battered-woman syndrome. At trial, plaintiff testified to numerous instances of physical and psychological abuse she suffered during her marriage to defendant. Although defendant denied many of plaintiff's allegations, he admitted at trial to making plaintiff shave her pubic hair while on their honeymoon, marking her entire body with lipstick and writing profanity on her stomach while she was pregnant, and swearing at plaintiff and accusing her of infidelity if she returned home from work late. Plaintiff secured a relief-from-abuse order against defendant in 1992.

To help explain the impact of the abuse on plaintiff, she offered expert testimony on PTSD and battered-woman syndrome. Plaintiff argued that the testimony was relevant and helpful on the property and maintenance issues before the court. Defendant objected to the expert testimony, arguing that expert testimony on post-traumatic stress disorder resulting from abuse was admissible only to explain the victim's bizarre behavior and that the expert was prohibited from giving her opinion that plaintiff suffered from PTSD or battered-woman syndrome. The court accepted plaintiff's offer and admitted the testimony.

Trial courts have wide discretion in making evidentiary rulings, and we will not overturn the court's decision in the absence of an abuse of discretion. *State v. Hunt,* 150 Vt. 483, 501, 555 A.2d 369, 380 (1988).

■ ■ V.R.E. 702 makes admissible expert testimony that will help the trier of fact understand the evidence or determine a fact in issue. Expert testimony in the form of an opinion is not objectionable merely because it embraces an ultimate issue the fact-finder must decide. V.R.E. 704; see also *State v. Norton,* 134 Vt. 100, 104, 353 A.2d 324, 326 (1976) (officer's opinion testimony that defendant was under influence of intoxicating liquor was properly admitted as opinion evidence in driving-under-the-influence prosecution). Indeed, "[o]pinion evidence has no probative value greater than the reasons which support it. It does not establish a material fact as a matter of law and is not of controlling effect." *Norton,* 134 Vt. at 103, 353 A.2d at 326.

In determining property and maintenance issues, the family court is authorized by statute to consider certain relevant factors. See 15 V.S.A. §§ 751(b) (property) & 752(b) (maintenance). In this case, expert testimony was offered and admitted to assist the court in this respect. See 15 V.S.A. § 751(b)(2) (health of parties); *id.* § 751(b)(4) (employability); *id.* § 751(b)(12) (respective merits of parties); *id.* § 752(b)(5) (physical and emotional condition of parties); cf. *Knock v. Knock,* 621 A.2d 267, 274 (Conn. 1993) (expert opinion that wife manifested battered-woman's syndrome admissible to help court determine child custody); *In re Marriage of Mitchell,* 809 P.2d 582, 585 (Mont. 1991) (in proceeding to modify custody, social worker could testify as expert on proper custodian and, as basis for her opinion, state that she believed one parent had abused the child). In addition, plaintiff offered the expert's testimony to explain why she had remained in the marriage for so long despite defendant's abusive treatment. Cf. *Blair v. Blair,* 154 Vt. 201, 203-05, 575 A.2d 191, 192-93 (1990) (trial court erroneously relied on popular misconception that abused wife could have left abusive husband at any time).

Defendant argues that the expert's opinion should not have been admitted because it was based on the expert's belief that plaintiff was the victim of abuse, both physical and verbal, at the hands of her husband. He argues that controlling here is a line of decisions arising from child sexual-abuse prosecutions where we prohibited expert opinion testimony that the victim had been sexually abused. See, e.g., *State v. Weeks,* 160 Vt. 393, 400, 402-03, 628 A.2d 1262, 1266-67 (1993); *State v. Sims,* 158 Vt. 173, 178-81, 608 A.2d 1149, 1152-54 (1991).

■ Defendant reads the criminal cases as an outright ban on the use of expert testimony on PTSD unless it is offered solely to explain bizarre behavior of the victim. In the context of this case, the testimony was relevant and helpful on issues distinct from those tried in child sexual-abuse prosecutions. Unlike child sexual-abuse prosecutions, the severity and long-lasting effects of defendant's abuse on plaintiff's emotional health, her future counselling needs, and her potential employability were at issue during the trial. The severity of the victim's injury is not pertinent in child sexual-abuse prosecutions where the trier of fact must determine only whether the charged conduct occurred and the perpetrator's identity.

■ ■ We note that defendant's cross-examination of plaintiff's expert adequately protected against the trial court giving undue weight to the expert's opinion that plaintiff suffered from PTSD as a result of defendant's abuse. See *Cappiallo v. Northrup*, 150 Vt. 317, 319-20, 552 A.2d 415, 417 (1988) (with assistance of cross-examination, it is for fact-finder to measure worth of expert's opinion); cf. *MMOE v. MJE*, 841 P.2d 820, 826-27 (Wyo. 1992) (evidence of psychologist concluding that mother had sexually assaulted child was admissible; "the existence of sexual abuse and the method of determining whether the son had been sexually abused became a battle between experts," which trier of fact could resolve by deciding which expert was more convincing). We conclude that the family court judge properly exercised his discretion in admitting the evidence after finding the expert's opinions helpful "to understand the evidence" bearing on property distribution and maintenance.

We briefly address defendant's two other arguments concerning property division and the award of permanent maintenance. Defendant attacks the property distribution as overwhelmingly one-sided in plaintiff's favor. That characterization might be accurate if we ignore the value of a condominium in Craftsbury Common, which the court included as a marital asset and distributed to defendant. Defendant challenges the decision to include the condominium in the marital assets.

■ The court included the condominium because there was evidence that defendant purchased it with money given to him by his father and sister. Defendant placed this money in his girlfriend's checking account and then used this money to purchase the condominium, titling it in the girlfriend's name alone. When questioned by plaintiff's counsel, defendant stated that he put the money from his

family in the girlfriend's account "[s]o my wife wouldn't come after the money," and thus could not get a "piece of the action." Following the girlfriend's death, defendant used a power of attorney granted him by her to quitclaim the condominium to himself. At the time of trial, defendant continued to reside in this condominium.

This case falls squarely within a line of recent decisions giving family court judges the power to include within marital assets property which has been placed in other names to avoid distribution to a spouse. See *Nuse v. Nuse*, 158 Vt. 637, 637, 601 A.2d 985, 985-86 (1991); *Bassler v. Bassler*, 156 Vt. 353, 363, 593 A.2d 82, 88 (1991); *Nevitt v. Nevitt*, 155 Vt. 391, 400, 584 A.2d 1134, 1139-40 (1990); *Clayton v. Clayton*, 153 Vt. 138, 142, 569 A.2d 1077, 1079 (1989). As we stated in *Nevitt*, we will not condone and give effect to such action "when taken with intent to deprive one's spouse of a fair portion of the marital assets." *Nevitt*, 155 Vt. at 400, 584 A.2d at 1139.

The court's findings with respect to the condominium are not clearly erroneous and must stand. V.R.C.P. 52(a)(2). In turn, the conclusions are supported by the findings and, therefore, are not erroneous.

■ When we include the value of the condominium, the distribution gave defendant roughly 40% of the assets. The family court based this award on a careful consideration of each of the factors specified in 15 V.S.A. § 751(b). In addition, it used the property award to reimburse plaintiff for $11,680 defendant owed under the temporary order for maintenance, property taxes on the house, and reimbursement of plaintiff's medical bills. If we subtract out this reimbursement, the distribution is close to 50% each. The court has considerable discretion in making a property award, reversible only on a showing there is no reasonable basis to support it. *Bell v. Bell*, 162 Vt. 192, 197–98, 643 A.2d 846, 850 (1994). There is no abuse of discretion here.

Defendant also challenges the court's maintenance award, arguing that the court failed to consider his ability to pay. Based on its findings, the family court concluded that plaintiff was unable to provide for her reasonable needs following the dissolution of the marriage and could not support herself through employment at the standard of living established during the marriage. It fully evaluated the factors set forth in 15 V.S.A. § 752(b), including the extent to which the property award would meet plaintiff's needs, and awarded permanent maintenance of $125 per week, adjusted annually for inflation.

■ To render a successful challenge to a maintenance award, a party "must show that there is no reasonable basis to support it." *Bancroft v. Bancroft*, 154 Vt. 442, 445, 578 A.2d 114, 116 (1990). Defendant fails to make such a showing. As a threshold matter, this case presents a fairly classic fact pattern supporting the award of permanent spousal maintenance. The parties were married for a number of years, during which plaintiff remained at home to tend the marital home and raise the parties' daughters. As a result, the skills she once held as a beautician became outdated. Plaintiff did seek employment later in the parties' marriage, but was limited in her pursuits by defendant's demand that she not take a position where any of her co-workers were men. Moreover, she is unable to maintain full-time employment due to her poor health. On similar facts, we have held that maintenance was awardable as a matter of law. See *Strauss v. Strauss*, 160 Vt. 335, 342, 628 A.2d 552, 556 (1993); see also *Klein v. Klein*, 150 Vt. 466, 475-77, 555 A.2d 382, 388-89 (1988) (wife with no college education and limited recent work experience entitled to maintenance after devoting most of lengthy married life to raising parties' children and supporting development of husband's career). We see no reason to conclude differently on the facts of this case.

■ Defendant argues that the family court failed to find that he had the ability to pay the maintenance award. While conceding that he expected to earn $24,000 a year as a barber, at a time when he was working only three days a week, defendant now complains that the court did not make findings regarding his present living expenses or his anticipated future living expenses. The short response is that the court made no findings on defendant's living expenses because he proposed none; his evidence on this issue was only that he had a monthly mortgage payment of about $442, and his credit card debt stood at about $6,550. Moreover, as the family court found, defendant repeatedly refused to respond to plaintiff's discovery requests for financial information. Given the evidence available to it, we conclude the court acted reasonably and within its discretion. See *Milligan v. Milligan*, 158 Vt. 436, 441, 613 A.2d 1281, 1284 (1992) (where defendant failed to respond to discovery and offered conflicting evidence on ability to cash out his pension, court could act on limited information it had and assume such cash-out was possible).

*Affirmed.*

**Morse, J.,** concurring. I concur in the result, but do not agree that all the expert's opinions were admissible. I do not question the

admissibility of the opinion that plaintiff suffered what is commonly known as post-traumatic stress disorder (PTSD). The expert made this determination based on plaintiff's symptoms of anxiety attacks, exaggerated startle response, low self-esteem, fatigue, depression, suicidal ideation, nightmares, and flashbacks. The fact that plaintiff suffered from PTSD was all that was relevant or necessary to decide the issues this Court finds important – plaintiff's emotional health, counseling needs, and employability.

I do question, however, the admissibility of the opinion that plaintiff suffered from a subcategory of PTSD known as battered-woman's syndrome (BWS). That opinion was based solely on the history plaintiff gave the expert that she had been battered by her husband. A diagnosis of BWS was relevant only to the issue of defendant's fault – who and what caused plaintiff's mental disorder. The expert's opinion was nothing more than a disguise for placing plaintiff's prior consistent statements about being abused by her husband before the court, this time with the expert's imprimatur upon them.

This type of credibility bolstering is inadmissible. Diagnosis by an expert witness that a person suffers a particular syndrome disorder that must have been caused by a particular person or in a particular way encroaches on the fact-finder's province of determining credibility. The science of truth detection is not sufficiently reliable to warrant admissibility of an expert's acceptance of a victim's story under V.R.E. 702. See *State v. Wetherbee*, 156 Vt. 425, 431, 594 A.2d 390, 393 (1991) (expert may not assume role of "truth detector" because no expertise in determining truth). Simply put, an expert has no more reliable method of determining credibility than an average person and, therefore, does not "assist" the fact-finder under V.R.E. 702.

The rationale used to exclude expert diagnosis of child abuse syndrome in criminal cases applies equally, in my opinion, to limit expert diagnosis of battered-woman's syndrome in divorce proceedings. See V.R.E. 1101 (V.R.E. 702 applicable to all proceedings); see also *In re Gina D.*, 645 A.2d 61, 63-65 (N.H. 1994) (court's reliance on expert's testimony that father sexually abused daughter reversible error in civil abuse proceeding because expert's testimony not sufficiently reliable).

In the context of this case, however, the error was harmless. The record demonstrates that the trial court recognized that the expert could not simply be a conduit for plaintiff's complaints. Moreover, the overwhelming evidence given defendant's admissions demonstrates

the family court would have reached the same result. Similarly, although evidence is not made admissible simply because the fact-finder is a judge and not a jury, the prejudice caused by the admission, if any, is easier to detect and weigh on appeal because the court makes findings of fact and conclusions of law. The court made five pages of findings detailing the abuse as told by the parties before even considering the expert's testimony.