### Joadi Tracey (Gaboriault) v. Thomas Gaboriault, Jr.

[691 A.2d 1056]

No. 95-639

Present: Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed February 21, 1997

*Mary G. Kirkpatrick* and *Christina A. Jensen* of *Lisman & Lisman*, Burlington, for Plaintiff-Appellant.

*M. Jerome Diamond* and *Earl F. Fechter* of *Diamond & Associates, P.C.*, Montpelier, for Defendant-Appellee.

**Johnson, J.** In this appeal of a final divorce order, plaintiff wife challenges the family court's distribution of marital property, its child support and maintenance awards, and various aspects of its contempt sanction against defendant husband. Husband cross-appeals, also raising issues pertaining to the contempt sanction. We modify the contempt sanction slightly and reverse the child support determination, but otherwise affirm the order.

## I.

The parties, both forty-four years old at the time of the final divorce hearing in June 1995, had been married for twenty-two years when

they separated in September 1993. They have two daughters, the first born on May 10, 1979 and the second born on May 31, 1982. The parties met in college and married shortly after husband obtained an associate's degree in hotel and restaurant management. Wife did not finish her degree.

The year after their marriage, the parties moved to Vermont and purchased a restaurant and inn, which they operated for ten years before turning the building into a residential care home. The parties worked long hours but struggled financially during the first ten to fifteen years of their marriage. Wife worked outside the business during three separate time periods when the parties needed extra money — twice as a bookkeeper and once selling cosmetics. By 1987, the parties' business was beginning to prosper. In 1994, the final full year before the divorce, the business's cash flow exceeded $115,000.

During their marriage, the parties worked as a team. Wife handled the bookkeeping and other financial matters, while husband managed the business's day-to-day operation — overseeing the staff and interacting with the residents. Wife was generally more responsible for the care of the children, but husband was also involved in caring for the girls. After their separation, the parties continued to run the business together.

In July 1994, the parties stipulated to a temporary order regarding debt obligations and child support for wife, who was to have custody of the children. A companion agreement, also incorporated into the temporary order, made husband responsible for (1) paying himself and his wife specified monthly salaries as well as rent for the business's use of the commercial real estate and the parties' van, and (2) dividing between the parties the business's accounts receivable. The parties found it more and more difficult to work together, however, and in January 1995, husband fired his wife and discontinued her salary and certain rent payments.

A three-and-one-half-day final divorce hearing took place in June 1995. The family court issued a sixty-one-page decision in which it (1) divided the parties' $650,000 in marital assets equally, with wife keeping the marital residence and husband retaining the business while having to pay wife one-half the value of the commercial real estate over a ten-year period at a 6% interest rate; (2) awarded wife temporary rehabilitative maintenance beginning at $20,000 annually for the first two years and decreasing to $18,000 in the third year, $16,000 in the fourth year, $14,000 in the fifth year, $10,000 in the sixth year, and $5000 in the seventh year; (3) ordered husband to pay wife

$1029 per month in child support; and (4) found husband in contempt and required him to pay wife $10,387 for failing to make payments to her in accordance with the stipulation incorporated into the July 1994 temporary order.

On appeal, wife claims that the court erred in (1) not requiring husband to pay her an additional five and one-half months of van rent payments as part of the contempt sanction; (2) failing to value and distribute as marital property the equity derived by husband from real estate purchased by his father before the parties divorced; (3) failing to award her permanent maintenance; and (4) determining husband's gross income for purposes of calculating his spousal and child support obligations by first deducting payments that he was required to make to wife pursuant to the court's distribution of property. In his cross-appeal, husband argues that the court erred in (1) finding that he had the financial ability to comply with the July 1994 temporary order, and (2) requiring him to pay wife's full salary under that order during a period for which she had collected unemployment compensation.

## II.

We first consider the court's contempt sanction. The court found that the July 1994 order, among other things, obligated husband to pay his wife $250 per month for the business's use of their van. The court also found that there was no termination date for the arrangement under the order, and that in February 1995 husband unilaterally, without good cause, stopped making the required payments. The court then determined that husband owed wife $500 for not making the van rent payments in February and March. Although the court explained why other payments would be calculated for a limited time period, it failed to explain why the van payments would be calculated for only the two months.

On appeal, wife argues that she was entitled to an additional five and one-half months of van payments as part of the contempt sanction to compensate her for the lack of payments from April 1995 until the court's final order. Husband counters that wife did not present evidence of his failure to make the payments after March 1995, and that the court exercised its discretion by not requiring him to make payments beyond April 18, 1995, the date he filed his motion to modify the temporary order.

Neither of husband's arguments holds up. Wife explicitly requested that the court award van rent payments for the entire

period that the temporary order was in effect, up to the time of the court's final order. Further, the evidence plainly demonstrated that husband had made no van payments to her after January 1995. Nor can husband prevail on this issue by claiming that the court had the discretion to limit the award to the date he filed his motion to modify. The court denied husband's motion before the final hearing was held, and further, in its September 1995 decision, denied his motion to reconsider that ruling. The court stated that the appropriate contempt sanction was for husband to pay wife the sums due under the temporary order, which was in effect until the court's final decision in September 1995. The court's failure to include the additional five and one-half months of van payments appears to have been an oversight, and in any case payment was required by the court's own findings and conclusions. Accordingly, we conclude that payment to purge the contempt sanction must be increased by $1375.

We reject husband's cross-appeal argument that the court erred by concluding that he had the ability to make the payments at the time they were due. The court found that the business was in good shape during the period in which husband failed to make the required payments to his wife, that his willful failure to make those payments resulted from his misperceived concerns over finances rather than his inability to pay, and that in fact he had the ability to make the required payments. These findings are supported by the evidence.

■ We also reject husband's second cross-appeal argument that $9185 in unpaid salary awarded to wife as part of the contempt sanction should have been reduced by $4620, the amount of unemployment compensation wife received during the period in question. We agree with the trial court that whether wife is required to repay the unemployment compensation she received following the court's award is a matter between her and the Department of Employment and Training. See 21 V.S.A. § 1347 (any person who receives remuneration in wages for period in which unemployment benefits were received is liable for amount of overpaid benefits).

## III.

■ We now move to the property distribution. Wife argues that the court erred by failing to value and distribute husband's alleged theft of the business's opportunity to purchase adjoining real estate. We disagree.

In May 1993, four months before they separated, the parties placed a bid on a duplex that adjoined their commercial property. Although

the duplex was assessed at $87,000 and listed for $69,000, the parties' bid was between $25,000 and $30,000. As part of the compensation for the property, the parties offered to name the duplex "The Mary Baird House" and use it for elderly housing. The offer was rejected. As early as August 1993, husband discussed with his father purchasing the house; two months later, husband's father purchased the property for $48,000 with the same conditions previously offered by the parties. Having recently separated from wife, husband moved into one side of the duplex, paid rent to his father, and began to care for an elderly couple that rented the other side of the duplex.

Wife asked the family court to treat a component of the value of the Baird House — the difference between its listing price and sales price ($21,000) as an asset of the marriage. The court rejected this request, stating that the sale was an arms-length transaction, and that the parties' business acquired no enforceable interest from the sale. We find no abuse of discretion.

We disagree with wife that this situation is similar to situations in other cases where one spouse had placed assets in third persons' names to avoid distribution to the other spouse. See *Soutiere v. Soutiere*, 163 Vt. 265, 270-71, 657 A.2d 206, 209 (1995) (where husband placed money in his girlfriend's checking account and used money to purchase condominium, titling it in girlfriend's name alone, case fell squarely in line of recent decisions giving family court power to include within marital assets property that had been placed in names of third parties to avoid distribution to spouse). Here, the undisputed evidence was that husband's father purchased the Baird House, and that husband had no enforceable legal interest in the property.

Nor did the court abuse its discretion in refusing to increase the value of the parties' business as the result of the purchase of the Baird House, or in refusing to award wife greater assets because husband "stole" the business's opportunity to purchase the Baird House. Apart from evidence of minor instances where husband provided the Baird House elderly couple with services from the parties' business without reimbursing the business, there was no evidence demonstrating that the Baird House purchase enhanced the value of the parties' business, or that husband "stole" an opportunity that would otherwise have been available to the business. There was no evidence that the business would have been willing or able to purchase the Baird House for the same sum paid by husband's father, which was nearly double that offered by the business only six months earlier.

## IV.

Next, wife argues that the court erred by basing its maintenance and child support calculations on husband having an annual gross income of approximately $65,000. The court determined that (1) the income from the parties' business in 1994, the last full year before the final divorce hearing, was $115,000 not including $8000 in one-time divorce expenses — a full $20,000 higher than any previous year; (2) the business's future success was uncertain because it is a small, closely held corporation whose past success was the result of the parties' combined efforts; and (3) husband's projected income from running the business without wife would have to be reduced by $10,000 for the loss of wife's bookkeeping services, an additional $10,000 to $15,000 for the loss of her management services, approximately $6000 for the loss of income from upcoming vacancies, and $17,000 for lost revenue resulting from husband's payments to wife for her share of the commercial real estate awarded to her as part of the property settlement. Wife argues that the evidence does not support the deductions for upcoming vacancies and for her management services. She also argues that it was inappropriate, particularly with respect to the child support calculations, for the court to deduct husband's "mortgage" payments before arriving at his gross income available for support.

■ We conclude that the evidence supported deductions for upcoming vacancies and the loss of wife's management services. While the court noted that husband had found ways to fill vacancies in the past, there was testimony that vacancies could be a problem in the near future. Further, the evidence leaves no doubt that wife's contributions to the business were far more valuable than $10,000 for bookkeeping services. Essentially, the court's valuation of wife's services to the business was based on her most recent W-2, which claimed wages of $22,000. This was, if anything, a conservative estimate of the replacement value of her services.

■ Further, given all the facts and circumstances of this case, the court acted within its broad discretion in finding that husband's income available for spousal maintenance should not include the "mortgage" payments that he was required to pay wife. The court-ordered payments, which represented one-half of the net value of the parties' commercial real estate, were awarded to wife as part of the property settlement. The case wife relies on, Clapp v. Clapp, 163 Vt. 15, 22-23, 653 A.2d 72, 75 (1994) (affirming family court's order

requiring obligor spouse to sell marital home to ensure that he prioritize maintenance payments over residential mortgage payments), is inapposite and does not require a different result.

On the other hand, the family court was required to include the mortgage payments as part of husband's gross income in determining his child support obligation. Under the child support statute, "gross income" includes the gross receipts of a closely held business operation, minus ordinary and necessary business expenses. See 15 V.S.A. § 653(5)(D). Although the wife holds a mortgage on the parties' commercial real estate, the mortgage payments are part of the property settlement and cannot be considered business expenses. It may well be that the child support calculation approved by the family court was equitable, but the child support statute requires that all of the parents' income be accounted for first in calculating support under the guidelines before any deviation from the guidelines is permitted. See 15 V.S.A. § 654 (child support guidelines are based on concept that children should receive same proportion of parental income after parents' divorce as they would have received had parents remained together); 15 V.S.A. § 659(a) (if court finds that child support order based on guidelines would be inequitable, court shall establish support after considering all relevant factors, including those listed therein).

## V.

Finally, wife argues that the court abused its discretion by failing to award her permanent maintenance. Upon review of the record, we conclude that the court acted within its broad discretion in denying wife permanent maintenance. See *Johnson v. Johnson*, 155 Vt. 36, 40, 580 A.2d 503, 506 (1990) (family court has considerable discretion in ruling on maintenance).

In expressly declining to award permanent maintenance, the court first acknowledged that the most important factors in determining whether maintenance should be time-limited or permanent are the length of the marriage, the role played by the recipient spouse during the marriage, and the income that the recipient spouse is likely to achieve in relation to the standard of living established during the marriage. *Delozier v. Delozier*, 161 Vt. 377, 383, 640 A.2d 55, 58 (1994). Examining these factors, the court stated that although the parties had been married a long time, wife had not been a traditional homemaker during the marriage. Rather, in the court's view, wife had

been a fully active partner in the parties' businesses, and had successfully worked outside the family business in three different jobs. Further, although wife had been the primary caregiver for her daughters, husband had contributed significantly to raising the girls, and wife's care of the children had not prevented her from participating fully in the business and developing her skills.

In addition, the court noted that the parties' standard of living had varied over the years, and had been dependent on the contributions of both parties. The court concluded, based on wife's demonstrated ability to excel at the work she had done throughout the course of the marriage, that she was capable of immediately earning $20,000 to $22,000 per year as a bookkeeper, and that eventually she would be able to start her own business. In the court's view, wife had at least twenty years of a productive working life ahead of her, and her parental responsibilities to her teenage daughters would not prevent her from working immediately and eventually taking advantage of her entrepreneurial skills.

Comparing the parties' post-divorce situations, the court estimated that husband's annual income from the business would be approximately $65,000. After deducting maintenance and child support payments, husband's available annual income would be roughly $33,000 in the first two years and then would gradually return to the $65,000 figure, assuming he continued the business and the business continued to be successful without wife's contributions. The court concluded, however, that it would not be reasonable to project too far into the future a particular income for husband, considering that the business is a small, closely held enterprise that had been dependent on the parties' joint efforts and that continued to be dependent on an industry subject to change and a high degree of regulation.

On the other hand, according to the court, wife would be able to earn at least $20,000 per year right away in addition to over $6000 a year in interest from the property settlement. Thus, adding maintenance, her income would be approximately $45,000 per year in the first two years, with gradually declining support over the next seven years. The court concluded that within those seven years wife would be able to use her business skills and experience to approach or attain the standard of living established during the marriage.

At the heart of the wife's challenge to the maintenance award is whether the evidence supports the court's conclusion that within seven years she will be able to attain the standard of living established during the marriage. See *Klein v. Klein*, 150 Vt. 466, 476, 555

A.2d 382, 388 (1988) (rehabilitative maintenance alone is insufficient in long-term marriage unless court can find, based on evidence, that recipient spouse will be able to support herself at standard of living established during marriage). Wife complains that assuming she possessed the skills attributed to her by the court, she was not awarded enough capital to enable her to take advantage of those skills by starting her own business.

Upon review of the record, we cannot conclude that the evidence compelled the court, as a matter of law, to award wife permanent maintenance. The evidence supported the court's findings and conclusions that (1) the standard of living established by the parties over the course of the marriage varied depending upon the financial state of their businesses; (2) the parties' standard of living was highest during the last couple of years before their divorce; (3) the success of the small family business was the result of a combination of husband's and wife's individual efforts and talents; (4) though capable of doing so, wife was not interested in running the family business; (5) given the parties' breakup and the nature of the business, there was no guarantee that the business would prosper in the future; and (6) it would be unrealistic to project continued future income from the business at the 1994 level.

These and other findings and conclusions mentioned above provide a reasonable basis for the court's view that, under the circumstances, it would be unfair to require husband to generate a permanent fixed income for wife. Although there were no hard facts demonstrating unequivocally that in seven years wife would enjoy the standard of living achieved by the parties toward the end of their marriage, the court's maintenance award was reasonable in light of all the facts and circumstances of this case. See *Delozier*, 161 Vt. at 381, 640 A.2d at 57 (family court has broad discretion in determining amount and duration of maintenance award, which will be set aside only when there is no reasonable basis to support it). None of the cases cited by wife militate against affirming the award. See *Soutiere*, 163 Vt. at 272, 657 A.2d at 210 (affirming permanent maintenance award where wife was unemployable at time of divorce due to poor health and had remained at home to care for parties' children during twenty-seven-year marriage); *Delozier*, 161 Vt. at 380, 386, 640 A.2d at 56-57, 59-60 (where marital assets were insufficient to compensate wife for fourteen years during which she stayed home to care for parties' special-needs daughter rather than further her own career, court had discretion to provide wife with maintenance award that included

rehabilitative and permanent components); *Strauss v. Strauss*, 160 Vt. 335, 341-42, 628 A.2d 552, 555-56 (1993) (family court abused its discretion by not awarding at least some permanent maintenance to forty-eight-year-old wife with limited employment prospects who stayed home and raised parties' children during twenty-eight-year marriage).

Nor are we persuaded by wife's claim that the assets she was awarded in the property settlement are insufficient for her to take advantage of her business skills by starting her own business. The court found that both parties had received substantial assets in the property distribution from which they could meet their and their children's future needs. Although wife was not awarded a significant amount of income-producing property, she was awarded $330,000 in marital assets that she can use toward initiating or obtaining a business, if that is what she chooses to do.

*The child support determination is reversed, and the case is remanded for further consideration on that point. In all other respects, the family court's final divorce order is affirmed, except that paragraph 12 of the November 9, 1995 order is amended to require husband to pay wife $11,762 instead of $10,387 as part of the contempt sanction.*