## Lisa Ericson Nevitt v. Bertha Nevitt and Stephen Nevitt

## Stephen Nevitt v. Lisa E. Nevitt

[584 A.2d 1134]

No. 88-117

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 30, 1990

*William M. McCarty, Jr., McCarty Law Offices*, Brattleboro, and *Paul and Paul, P.C.*, Lyndonville, for Plaintiff-Appellee.

*Ardith L. Baldwin* of *Thomas W. Costello, P.C.*, Brattleboro, for Defendant-Appellant Bertha Nevitt.

*Jean B. Giddings* of *Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, for Defendant-Appellant Stephen Nevitt.

**Gibson, J.** Stephen Nevitt appeals those portions of a divorce judgment granting his wife, Lisa, custody of their minor child, child support, spousal maintenance, and a share of the marital estate. In a companion case, Stephen's mother, Bertha Nevitt, appeals the trial court's disposition of the marital homestead, which, although held in Bertha's name, the court found was held by her as a nominee. Apart from one aspect of the court's child support ruling, we affirm the judgment.

## I.

Stephen and Lisa were married in January of 1976 and had one child, Laura, in August of 1977. During the marriage, Stephen operated his own wholesale jewelry business, with the assistance of Lisa. They resided in a house that the court found had a fair market value of $68,500 at the time the parties separated in April of 1985. Stephen purchased the house prior to the marriage, and in 1975 he transferred it to his father. After the

bank foreclosed the mortgage in 1979, Stephen and Lisa redeemed the property and put the title in Lisa's maiden name.

In July of 1985, approximately one month before Stephen filed for divorce, he asked Lisa to sign an agreement releasing her entire interest in the marital homestead. In return, Stephen was to pay Lisa $5,000 over a period of time and pay off a few relatively minor family debts. After initially refusing to sign and walking out on a meeting with Stephen and his attorney, Lisa, at the insistence of Stephen, finally signed the agreement and executed a blank warranty deed. Stephen made only one $500 payment under the agreement, claiming the value of a jewelry sample case stolen from Lisa's possession offset the remainder. At the time of trial, the deed was in the name of Bertha Nevitt, though Bertha had not been present when Lisa executed the deed, and the property transfer tax return indicated that she had paid no consideration for the property.

Stephen filed for divorce in August of 1985. The court advised the parties, prior to the final hearing, that Bertha would have to be joined as a party. Thereafter, Lisa filed a complaint against Stephen and Bertha, asserting that they had fraudulently coerced her into relinquishing all her interest in the marital homestead. The cases were joined and a hearing was held on September 3, 1987. At the hearing, the trial court ruled, in an oral notice of decision, that it would grant the divorce and award custody of Laura to Stephen, leaving the remaining issues for a later hearing; however, this decision was never incorporated into a written order because of a dispute over the wording of a proposed order.

At the close of the continued hearings, held on December 29, 30 and 31, 1987, the court noted that no decree had been issued following the earlier hearing, and it then made comprehensive oral findings, "covering all aspects of the case." A final decree disposing of all issues was ultimately filed on February 2, 1988. In addition to granting the divorce, the court awarded Lisa full parental responsibility for Laura, citing Lisa's ability to provide "consistent, intimate interaction" with Laura and her willingness to communicate with Stephen. Further, the court ordered that (1) Laura remain with Stephen in Vermont until the close of the school year; (2) Stephen pay Lisa $225 per month in child support; (3) Stephen have the right to occupy the

marital homestead for eighteen months, at which time Lisa would assume sole possession; (4) Stephen have the right, while occupying the homestead, to purchase the property from Lisa for $60,000; and (5) Stephen pay Lisa $275 per month in "spousal maintenance" while occupying the homestead or until he bought out her interest.

Both Stephen and Bertha appeal the final order. Stephen argues that the trial court erred by (1) improperly modifying the September 3 decision when it awarded custody to Lisa; (2) ordering him to pay child support while the child resided with him; and (3) awarding maintenance and attorney's fees when Lisa had made no request for such awards. In addition, he claims that the court's findings in dividing the marital property were not supported by the evidence. Bertha contends the trial court erred in finding that she held title to the marital homestead as a nominee and took unfair advantage of her as a pro se litigant.

## II.

Stephen first asserts that the court's initial award of custody to him constituted a final order and that no change in circumstances warranting a modification of the order had occurred between the September and the December hearings. Stephen also argues that the court erred in its division of parental rights and responsibilities by awarding Lisa legal custody while giving him physical custody till the end of the school year. We disagree on both counts.

■■ Subsequent events have rendered the custody issues moot. On March 11, 1988, Stephen brought Laura to her mother's work place in New Haven, Connecticut, and informed Lisa that he no longer wanted custody of the child. In April of 1988, the parties entered into a stipulation whereby they agreed that Laura would reside with her mother. The parties filed the stipulation with the court the following month. The custody issues thus have become moot. An issue that has become moot will not be considered by this Court on appeal. *North Country Educ. Ass'n v. Brighton School Bd.*, 135 Vt. 451, 452, 380 A.2d 60, 61 (1977); *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182, 185, 289 A.2d 669, 671 (1972).

■ Even if the issues were not moot, the court's order at the first hearing was not a final order because it did not dispose of all the issues between the parties. See *Morissette v. Morissette*, 143 Vt. 52, 58, 463 A.2d 1384, 1387–88 (1983) (test of whether a judgment is final is whether it makes a final disposition of the subject matter). The matter thus remained within the jurisdiction of the trial court, which had inherent, discretionary power to open and correct, modify or vacate its judgment. Cf. *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1162–63 (1986) (a motion under V.R.C.P. 59(e), which codifies trial court's inherent power to modify a judgment, suspends the finality of the judgment); *West v. West*, 131 Vt. 621, 623–24, 312 A.2d 920, 921 (1973) (same). A change such as that made by the trial court did not require a showing of a substantial change of material circumstances. See *West*, 131 Vt. at 623–24, 312 A.2d at 921–22.

## III.

Stephen also contends that the court erred by requiring that he pay child support for the period in which Laura resided with him before going to live with her mother in Connecticut. We agree.

Although the trial court awarded parental rights and responsibilities of Laura to Lisa, it awarded physical custody of Laura to Stephen from February 1, 1988 to June 15, 1988. Thereafter, physical custody was awarded to Lisa. The child support award, however, required Stephen to pay Lisa $225 per month for the support of Laura, starting on February 1st and including the entire four-and-one-half-month period in which Stephen was to be the physical custodian. There was no requirement that Lisa spend any of this "child support" on Laura while Stephen was the primary custodian. The court clearly intended that Stephen would house, clothe, feed and otherwise support his daughter while she resided with him and, at the same time, make payments to Lisa for child support. The court made no findings, and offered no reason, why it imposed this "double payment" obligation on Stephen. In the absence of a justification, we can find no authority in the child support statute for such an award.

Ordinarily, child support should be paid through the custodial parent. See *Klein v. Klein*, 150 Vt. 466, 477–78, 555 A.2d 382, 389 (1988). In fact, the statute now requires that the noncus-

todial parent pay his or her share of the child support obligation to the custodial parent. 15 V.S.A. § 656(a). There are reasons under the statute to deviate from the statutory requirement, see 15 V.S.A. §§ 657(a) and 659(a); however, we have no indication that the trial court used either of these bases since it offered no explanation for its act.

Upon review of the court's findings and conclusions, we can find no statement of reasons for ordering Stephen to pay child support to Lisa while he had physical custody of Laura. At best, the court's conclusions state a reason why Lisa was not ordered to pay child support to Stephen while he had custody. There is no consideration of the § 659 factors. The amount ordered is apparently calculated under the guidelines as if Lisa were the custodial parent. It is not related to specific needs Lisa might have as noncustodial parent, nor does it deal with the double-payment problem. While the court might have justified an award based on reasonable financial needs and necessary arrangements connected with Lisa's upcoming resumption of parental responsibilities, no such justification was given.

Consideration of this case as one of shared custody under § 657(a) might have allowed the court to consider Lisa's temporary needs as appropriate for a temporary maintenance supplement under 15 V.S.A. § 661(a). The court never made such an award, however, and § 661 requires a specific finding of a lower standard of living for the child which was not made here.

For the above reasons, the child support award in this case cannot be upheld. We reverse the ruling requiring Stephen to pay Lisa child support during the period in which Laura resided with him, and, accordingly, direct the court to order Lisa to reimburse Stephen to the extent that he made child support payments for the period from February 1, 1988 to March 11, 1988, the date on which Stephen relinquished custody of Laura.

## IV.

Stephen next argues that the maintenance award was not proper because Lisa did not plead or request such relief. We find no abuse of discretion. This case is factually similar to *Bero v. Bero*, 134 Vt. 533, 534–35, 367 A.2d 165, 166–67 (1976), where we upheld an alimony award even though it was not specifically

requested. The defendant spouse in *Bero* requested "such further relief as seems just," and the issue of alimony had been raised and contested at trial. Similarly, in the instant case, Lisa requested "other relief as may be appropriate" in a memorandum submitted to the court prior to the December 1987 hearing. Moreover, at the September 3, 1987 hearing, both parties consented to bifurcating the cases and resolving the noncustody issues, including maintenance, at a later hearing. Thus, Stephen was put on notice that the court would consider a maintenance award; nevertheless, he chose not to present evidence opposing such an award.

■ In *Lalumiere v. Lalumiere*, 149 Vt. 469, 472, 544 A.2d 1170, 1172 (1988), which Stephen cites in support of his argument here, we overruled the trial court's maintenance award because there was no indication that the defendant had ever sought such an award or that the issue had ever been raised or contested. The case, however, does not support Stephen's argument. The defendant in *Lalumiere* requested only visitation rights and a reasonable split in marital property. Further, we found that the defendant was self-sufficient and did not need maintenance. Neither of these circumstances are present in the instant case. Since Stephen was apprised that Lisa was seeking whatever relief was available to her and that the court was going to consider a maintenance award at the later hearing, the court's decision to award Lisa maintenance was not an abuse of discretion.

■ Even assuming the court erred by ordering a maintenance award, we would not find reversible error. The court ordered Stephen to pay $275 per month in maintenance to Lisa while occupying the marital homestead for eighteen months. During that time, Stephen had the option of buying the property for $60,000; if he did not do so, Lisa would retain ownership and assume sole possession thereof at the end of the eighteen-month period. Stephen is in effect arguing that he is entitled to occupy the premises rent free, although they have been awarded to Lisa. Whether the court denominated the payments "rent" or "maintenance," they amount to the same thing: compensation to Lisa by Stephen for the privilege of occupying her property. Cf. *Cab-Tek, Inc. v. E.B.M., Inc.*, 153 Vt. 432, 435, 571

A.2d 671, 673 (1990) (Court will affirm correct judgment that is based on erroneous grounds).

■■ Stephen also contends that the court erred by requiring him to pay attorney's fees despite the fact that Lisa did not request them in her pleadings. Again, we disagree. In divorce cases, the assessment of attorney's fees is proper "where justice and equity so indicate." *Peatman v. Peatman*, 140 Vt. 532, 534, 442 A.2d 1290, 1291 (1982). The primary consideration in awarding attorney's fees is the ability of the supporting party to pay and the financial needs of the party receiving the award. *Ely v. Ely*, 139 Vt. 238, 241, 427 A.2d 361, 363 (1981); cf. *Lalumiere v. Lalumiere*, 149 Vt. at 473, 544 A.2d at 1173 ("court may determine whether to make an award of 'suit money' based on the financial circumstances of the parties"). Further, in cases of demonstrated need, attorney's fees may be awarded absent a specific request for them in the pleadings. See *Tidwell v. Tidwell*, 379 So. 2d 614, 615 (Ala. Civ. App. 1980). In the instant case, Lisa's need was well documented and the trial court did not abuse its discretion by so ordering. See *Bibens v. Bibens*, 144 Vt. 287, 288–89, 476 A.2d 134, 135 (1984).

## V.

■ ■ Next, Stephen and Bertha contend that the court should not have set aside the agreement and deed in which Lisa relinquished her interest in the homestead. Although an agreement distributing marital property is presumed to be fair, *Barbour v. Barbour*, 146 Vt. 506, 510, 505 A.2d 1217, 1219 (1986), the trial court may refuse to honor a property division agreement that is the result of, among other things, fraud, duress, or unconscionable advantage. *Burr v. Burr*, 148 Vt. 207, 209, 531 A.2d 915, 917 (1987) (trial court justified in refusing to honor property settlement where court found that its actions and the situation had put substantial pressure on parties to sign agreement). Here, the trial court held the agreement invalid because (1) it was an inequitable attempt by Stephen, one month before he filed for divorce, to avoid distribution of any part of the marital homestead to Lisa; (2) Lisa had signed the agreement only after threats of physical force and intimidation from Stephen; and (3) Stephen was already in breach of the agreement. After

reviewing the record, we find that the evidence supports the court's findings, and the findings were sufficient for the court, in its discretion, to set aside the agreement. See *Collins v. Boudreau*, 141 Vt. 129, 131, 446 A.2d 341, 342 (1982) (findings will stand where there is "any credible evidence fairly and reasonably tending to support them"); cf. *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138, 535 N.E.2d 643, 647, 538 N.Y.S.2d 513, 517 (1989) (an agreement is unconscionable when the terms are unreasonably favorable to one party).

With respect to the deed, Bertha argues that the court erred in concluding that she held title to the property as a nominee. Under 15 V.S.A. § 751(a), all marital property "shall be subject to the jurisdiction of the court . . . whether in the names of the husband, the wife, both parties, or a nominee." The court concluded that Bertha was a nominee based on its finding that Stephen had put title to the marital homestead in Bertha's name in order to "unfair[ly]" avoid distribution of the property at the time of the divorce, as well as to continue to hide the asset from creditors. This Court will not condone such actions when taken with intent to deprive one's spouse of a fair portion of the marital assets. See *Clayton v. Clayton*, 153 Vt. 138, 142, 569 A.2d 1077, 1079 (1989).

In *Clayton*, six months after the son filed for divorce, his father had him resign as president of the family business and transfer his interest in stock in order to diminish the assets that would have been available to his wife upon divorce. Citing longstanding precedent, we held that an agreement to convey marital assets in contemplation of divorce in return for little or no consideration is contrary to public policy and unenforceable as a fraudulent transfer. *Id.*; see also *Patch v. Squires*, 105 Vt. 405, 410, 165 A. 919, 921 (1933) (it would be an illegal act for spouse to make gifts of money with fraudulent intent of preventing other spouse from obtaining distributive share of estate).

██ The court found that Bertha provided no consideration for the conveyance, as indicated by the property transfer tax return, which characterized the conveyance of the homestead as a "transfer without consideration between daughter-in-law and mother-in-law." See *Becker v. Becker*, 138 Vt. 372, 377, 416 A.2d 156, 160 (1980) (statements on transfer tax return are presumptively true since they are made under oath). Inasmuch as

the evidence supports the court's findings, they must stand. The court did not abuse its discretion in refusing to honor the agreement and deed in the divorce decree.

## VI.

Stephen contends that the record does not support the court's finding that the jewelry business was worth $70,000. The trial court acknowledged that it could not put a precise value on the business because of Stephen's history of deliberately concealing his assets from his creditors and even his wife. The court found, however, based on income tax returns indicating that the business grossed $60,000 per year and Lisa's testimony that when she left in April of 1985 there was $120,000 worth of inventory on hand, that the business was worth at least $70,000. In the absence of more precise evidence of value, the court was within its discretion in accepting Lisa's estimate. See *Wood v. Wood*, 143 Vt. 113, 119, 465 A.2d 250, 253 (1983) (court has discretion to choose one party's estimate of value of property over the other party's estimate).

## VII.

Lastly, Bertha argues that we should remand this case in order to prevent a failure of justice to a pro se litigant. Bertha points out that the court had to be reminded of her right to cross-examine a witness, and at one point, disregarded her claim that she was unable to hear the testimony. Bertha argues that if the court had properly assisted her, she might have presented additional evidence concerning the issues of duress and consideration and her status as a nominee. Although we will not permit unfair advantage to be taken of one who acts as her own attorney, it is not the trial court's responsibility to offer affirmative help to a pro se litigant. *Olde & Co. v. Boudreau*, 150 Vt. 321, 322, 552 A.2d 793, 794 (1988). The court may have been unduly abrupt with Bertha; nevertheless, a remand is not required because Bertha has not indicated what evidence she might have produced in addition to the evidence presented at trial. See *Paradis v. Kirby*, 138 Vt. 524, 528, 418 A.2d 863, 865 (1980) (party claiming error has burden of showing prejudice).

*The superior court is directed to order Lisa Nevitt to reimburse Stephen Nevitt to the extent he made child support pay-*

*ments for the period from February 1, 1988 to March 11, 1988. The judgment is affirmed in all other respects.*