# Dawn (Dodge) Adamson v. Jeffrey Dodge

[816 A.2d 455]

No. 01-494

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed November 1, 2002

*Cynthia L. Broadfoot* of *Cynthia Broadfoot, P.C.*, Burlington, for Plaintiff-Appellee.

*Beth Robinson* of *Langrock Sperry & Wool, LLP*, Middlebury, for Defendant-Appellant.

**Johnson, J.** Father Jeffrey Dodge appeals from an order of the Chittenden Family Court granting mother Dawn (Dodge) Adamson's motion to enforce the terms of the parties' divorce order, denying father's motion pursuant to V.R.C.P. 60(b) to set aside the divorce order, and granting father's motion to modify present and future support obligations. He alleges that the trial court erred: (1) in modifying child support obligations without considering Vermont's Child Support Guidelines and without justifying deviations from the guidelines; (2) in setting child support obligations at a level that exceeded father's ability to pay according to the trial court's own findings; (3) in reallocating dependency exemptions from father to mother and thus further reducing the amount of money father has available for child support; (4) in setting the date of retroactivity for modification of father's child support obligation without making findings to support the chosen date and assessing father's premodification support obligation incorrectly; (5) in violating federal bankruptcy law by imposing upon father a debt discharged in bankruptcy; (6) in awarding attorney's fees to mother; and (7) in failing to set aside an order that was impossible from the outset. We affirm the trial court in refusing to set aside the final divorce order, but we reverse the trial court's reallocation of the dependency exemptions, imposition upon father of the debt discharged in bankruptcy, and award of attorney's fees, and remand for recalculation of the amount of father's child support obligation and for reconsideration of the other issues raised in this appeal consistent with this opinion.

The trial court found the following facts. The parties met in college, where they both received degrees in engineering. They married in 1987, and had four children over the course of their eleven year marriage. In 1992, father enrolled in medical school. Mother stayed at home and cared for their children. For support, the family borrowed money and received government assistance. The family moved frequently throughout the midwest so that father could obtain medical training, finally moving to Vermont where father completed his residency requirements.

In 1998, father disclosed to mother that he was gay, and the couple separated later that year. The couple went to a mediator to settle the

terms of the divorce in August of 1998. In June of 1999, mother and father signed a stipulation settling the terms of the divorce. Mother was represented by counsel, but father did not want representation. The following provisions of the stipulation are relevant to this appeal: (1) Father assumed all student loans and credit card debt. (2) Mother retained sole parental rights, but father would have contact with his children for two weekends a month, some vacations, and some holidays. (3) During father's residency, child support of $1,040 per month, established in accordance with the Vermont Child Support Guidelines, would be paid by father to mother, along with a $500 per month maintenance supplement. At the end of father's residency, father's payments to mother of child support and maintenance supplement were to increase to one-half of his pretax income, or $90,000 a year, whichever was greater. This child support floor was based on the parties' assumptions about average salaries for gynecologists in the midwest. (4) Father assumed the entire cost of the children's college educations. (5) Father could claim all four children each year as dependents for income tax purposes. (6) Father's child support obligations continued until the youngest child turned eighteen or terminated his secondary education. At that time, the obligations became spousal support obligations. (7) Any modification of child support obligations due to a significant change of income was to be calculated based on the Child Support Guidelines. (8) In the stipulation, the parties failed to recognize that father's available income for child support was significantly less than his gross salary due to taxes, student loan payments, and credit card debt obligations. Father had assumed that he would be splitting his after tax income, although the stipulation referred to pretax income. The terms of the stipulation were incorporated into a final divorce order issued on January 21, 2000.

Father accepted a position in Wisconsin at a private medical office to begin on July 31, 2000. He hoped that mother would move to Wisconsin so that he could continue regular visits with the children. Father paid the requisite child support through the date that he finished working as a resident, June 22, 2000. Between June 22 and July 31, father was unemployed and did not make any child support payments to mother. According to father, during this time he prepared and sat for his board certification exams.

On July 19, 2000, mother filed a motion to enforce child support obligations. In her motion, she demanded salary withholding from father at the $1,540 per month rate that father was obligated to pay

during his residency. On the same day, she filed a petition to modify child support, demanding that father's payments be increased to $7,500 per month in accordance with the provision of the divorce stipulation that payments were to increase to this level when father finished his residency. On August 7, 2000, father filed both a motion for relief from judgment and a motion to modify the child support obligations contained in the divorce stipulation. During the following year, father made payments to mother of between $3,500 and $4,000 a month.

While employed by Aurora Medical Group in Wisconsin, father's salary was $195,000. His gross monthly pay was $16,000. After taxes, father took home $9,500. The trial court found that each month father made $2,300 in student loan payments, payments to mother averaging $3,500 monthly, $1,400 in minimum credit card payments, $675 in rent payment, and payments of approximately $800 for travel expenses to visit his children in Vermont. The trial court found that father had $400 to $500 available for utilities, food, and telephone bills.

Within two weeks after he began his Wisconsin job, father gave his six-month notice of his resignation. Mother had decided not to relocate. He wanted to return to the Vermont area to be closer to his children. The trial court found that under the circumstances father's decision to make this move was not unreasonable despite the resulting decrease in his salary. In January 2001, father moved to Plattsburgh, New York to take a position as a gynecologist.[1] Father's salary initially decreased to $135,000, although it was expected to increase to $150,000 after the first year, then to decrease as he bought into the practice, and eventually to level out at approximately $200,000 per year. For the initial year in Plattsburgh, father's gross monthly pay was $11,250, and the trial court concluded father's reasonable monthly expenses, excluding child support, were $7,520. The trial court does not provide any rationale for this estimate of father's expenses, but they are the same numbers that appear in father's affidavit of his expenses in Plattsburgh, which included taxes of $4,172 per month. This leaves father with $3,730 available monthly for child support.

Two additional events have altered the financial position of the parties in this dispute. First, in March of 2001, mother secured employment as an engineer paying $60,000 per year. Second, in June 2001, father filed for Chapter 7 bankruptcy. The final divorce order required father to assume all credit card debt incurred during their

[1] The trial court found this date to be June 2001 as opposed to January 2001, but both the appellant and the appellee stipulate that the correct date is January 2001.

marriage. When father filed for bankruptcy, his credit card obligations were discharged. Because mother's name remained on the account, the Fleet credit card company sought repayment from mother.

The trial court declined to set aside the final divorce stipulation, but agreed with father that his financial circumstances did not allow him to pay mother the $7,500 minimum monthly support as the parties anticipated. The court thus granted mother's motion to enforce the divorce order as well as father's motion to modify child support obligations. Section 660 of Title 15 allows a court to modify child support obligations upon a finding of "a real, substantial and unanticipated change of circumstances." 15 V.S.A. § 660. The trial court found that father had "maintained a modest lifestyle" while living in Wisconsin and Plattsburgh, that his loan payments are higher and his salary lower than the parties expected when they entered into the stipulation, and that his move to Plattsburgh was reasonable under the circumstances. The court also observed that mother is now earning more than the parties may have anticipated when they signed the stipulation. On the basis of a finding of a change of circumstances, the court reduced the amount of child support that father was to pay monthly from the $7,500 per month specified in the divorce stipulation to $4,500 a month. This reduction in father's support obligation was made retroactive to September 1, 2000, approximately one month after father filed his motion for modification. The court awarded mother $25,000 in past due child support, without explaining how it calculated the arrears. The court determined father should pay that balance to mother at $500 a month until the balance was cleared. The court also held father responsible for the credit card debt transferred to mother following father's bankruptcy. The court ordered father to pay $500 monthly to mother until the remaining balance ($13,000 plus interest and penalties) was cleared. The court ordered father to pay $15,000 of the attorney's fees mother incurred to enforce the divorce stipulation. Finally, the court determined that mother would receive the tax deductions for the two oldest children effective beginning in the 2001 tax year.

## A

Father first argues that the trial court erred in modifying child support obligations without addressing the Child Support Guidelines as required by 15 V.S.A. §§ 654-663. He claims that the court may award support that is not based on the support guidelines only after consideration of the factors established in 15 V.S.A. § 659(a) and must

give an explanation of why these factors justify the deviation from the guidelines. In this case, the trial court made no findings based explicitly on these factors. There was no reference to the Child Support Guidelines in its decision. Although we note that father's income may have exceeded the levels of the support guidelines adopted by the Agency of Human Services, and that § 656(d) states that the "court may use its discretion in determining child support" when incomes exceed the level covered by the guidelines, we have held previously that the factors listed in § 659(a) must still be considered in cases where a noncustodial parent's income exceeds the guideline tables. *Smith v. Stewart*, 165 Vt. 364, 372, 684 A.2d 265, 270 (1996). Based on the statute and the policies underlying Vermont's child support system, we agree with father that the trial court failed to justify its decision to deviate from the Child Support Guidelines based on the statutory factors.

██ Child support obligations are always subject to review and modification, and the trial court properly granted father's motion to modify child support obligations. When there is a "real, substantial and unanticipated change of circumstances," a court may review a child support obligation and modify the amount of required payments. 15 V.S.A. § 660(a). The fact that the original child support obligation is set by a stipulation does not affect the court's prerogative to modify the child support order: "A court may modify child support whether it is based on a stipulation or agreement." *Rogers v. Wells*, 174 Vt. 492, 495, 808 A.2d 648, 651 (2002); 15 V.S.A. § 660(a).

██ Child Support Guidelines are the appropriate tools for calculating child support obligations when modifying a divorce stipulation or final order. See 15 V.S.A. §§ 654-656. In this case, turning to the guidelines is appropriate not only in order to comply with Vermont's statutes, but to uphold the intention of the parties: the parties' divorce stipulation itself included a provision that any modification of child support obligations must be calculated using the established Child Support Guidelines. In situations where a noncustodial parent's income exceeds the guidelines, we have held that the court's "decision must reflect the principles behind the guidelines." *Smith*, 165 Vt. at 372, 684 A.2d at 270. The guidelines were designed to ensure that children receive the same proportion of parental income after separation/divorce as they would have received if parents had remained together, to eliminate discrepancies in awards between children in similar circumstances, and to improve efficiency of child

support adjudication. *Grimes v. Grimes*, 159 Vt. 399, 403-04, 621 A.2d 211, 213 (1992); 15 V.S.A. § 654.

■ Determining child support obligations based on the guidelines is a two step process. First, both parents' monthly gross income must be converted to available income. Available income is defined in 15 V.S.A. § 653(1) as gross income less taxes owed and certain other enumerated deductions.[2] Then, using the tables provided for by the Secretary of Human Services, child support obligations are determined based on the parents' combined available income. 15 V.S.A. § 654. If the available income of custodial and noncustodial parents "exceeds the uppermost levels of the support guideline," the statute gives the trial courts discretion to establish child support obligations. 15 V.S.A. § 656(d). This discretion is not boundless, however. Courts are required to justify and explain their child support orders according to factors laid out in the statute. *C.D. v. N.M.*, 160 Vt. 495, 500, 631 A.2d 848, 851 (1993). When a court decides to deviate from the guidelines, "the trial court's findings and conclusions must show it considered the factors specified in § 659(a) as well as other relevant factors." *Ainsworth v. Ainsworth*, 154 Vt. 103, 114, 574 A.2d 772, 779 (1990). Section 659(a) of Title 15 establishes that when deviating from the guidelines, courts must consider all relevant factors, including:

(1) The financial resources of the child.

---

[2] We note that under § 653, the amount of state and federal taxes to be subtracted from gross income in order to determine a parent's available income must be calculated based on certain assumptions rather than on actual taxes paid. For purposes of determining available income under § 653, a noncustodial parent such as father in this case is supposed to calculate state and federal income taxes using the standard deduction, single filing status, and one exemption. 15 V.S.A. § 653(1)(D)(ii). No provision is made for a situation where, as here, the parties have agreed by stipulation to allocate the tax exemptions for dependents to the noncustodial parent. The Agency of Human Services has promulgated tables converting gross income to available income, 4A Code of Vt. Rules §§ 13 161 001-10 through 16 (2000), and father's income in this case exceeds the maximum amount on the conversion table by $1,225 per month. However, the table that the Agency of Human Services is required to promulgate, the Table of Intact Family Expenditures on Children, covers families with combined available incomes of up to $12,524.99 per month. 4A Code of Vt. Rules §§ 13 161 001-4 through 9 (2000). With father's gross income less taxes of $7,078 per month, and mother's gross income of $5,000, they would fall in at the uppermost spectrum of the table, but within the table's boundaries, no matter how much mother pays in taxes. On remand, father is free to argue that a guidelines calculation should be made based on the money he actually pays in taxes under the allocation of tax exemptions that has been agreed upon in this case. We note, however, that if his income increases as projected, soon the parties' combined incomes will exceed the guidelines.

(2) The financial resources of the custodial parent.

(3) The standard of living the child would have enjoyed had the marital relationship not been discontinued.

(4) The physical and emotional condition of the child.

(5) The educational needs of the child.

(6) The financial resources and needs of the noncustodial parent.

(7) Inflation.

(8) The costs of meeting the educational needs of either parent, if the costs are incurred for the purpose of increasing the earning capacity of the parent.

(9) Extraordinary travel and other travel-related expenses incurred in exercising the right to parent-child contact.

(10) Any other factors the court finds relevant.

15 V.S.A. § 659(a).

In the instant case, in establishing father's child support obligation the trial court looked solely at mother and father's individual income and expenses. The court did not base its order on the Child Support Guidelines or an evaluation of each of the § 659(a) factors, or make findings of fact ascertaining whether or not father and mother's combined income was within the child support guideline parameters. The trial court found father's monthly gross income during his first year in Plattsburgh to be $11,250, and mother's gross monthly income to be $5,000. Thus, their combined monthly gross income comes to $16,250. As of 2000, the Vermont Table of Intact Family Expenditures on Children covered families with monthly combined available incomes up to $12,524.99, 4A Code of Vt. Rules § 13 161 001-9 (2000), so depending on the way that § 653(1) is applied to determine parents' available incomes, see *supra* footnote 2, parties in this case may fall within the bounds of the guidelines, or else so close to the edges that extrapolation is a viable method to determine child support. We have recognized that extrapolation from the guideline tables, while not required, satisfies the statutory requirements for setting support amounts for incomes exceeding the maximum provided for in the guideline tables. *Smith,* 165 Vt. at 371, 684 A.2d at 270.

We remand this issue to the trial court to determine mother and father's available income using 15 V.S.A. § 653, and to make a finding on whether their combined available income falls within the Child Support Guidelines. If their combined income is within the Child Support Guidelines, the trial court must determine child support

consistent with the guidelines. If their combined income exceeds the levels covered by the guidelines, the trial court must explain how it considered the factors specified in § 659(a) and the principles behind the guidelines in making its award. We therefore reverse the child support calculations and remand for further proceedings consistent with this opinion.[3]

## B

■ Father next argues that the trial court's reallocation of dependency exemptions was unsupported by the evidence and exacerbates the impossibility of father complying with the court's child support order. The 1999 stipulation of the parties assigned all four tax exemptions to father. The underlying findings of father's income in this case were supported by testimony and affidavits father made assuming that he could continue to claim all four tax exemptions. The trial court offered no explanation or justification for its reallocation of two of the tax exemptions to mother. As discussed *supra* in footnote 2, Vermont's Child Support Guidelines explicitly acknowledge the effect that dependency exemptions have upon available income of parties in a divorce. Section 661 of Title 15 requires the court to consider the parties' respective tax liabilities in calculating a maintenance supplement obligation. 15 V.S.A. § 661(a). It appears that the court's decision to reallocate the dependency exemptions was based on mother's unexpected return to the workplace. The decision to reallocate the dependency exemptions, however, contradicts the court's refusal to set aside the final divorce order, under which father

---

[3] Father further asserts that the trial court abused its discretion in assigning child support and maintenance supplement obligations exceeding his ability to pay, in violation of 15 V.S.A. §§ 659(a)(6), 656(c), and 661(a). Because we reverse the trial court's calculation of child support and maintenance supplement, it will be necessary for the trial court to recalculate child support and maintenance, and therefore we do not reach this issue. We note, however, that father's salary is expected to increase eventually from its current level of $135,000. On remand, the court may establish a mechanism for increasing father's support obligation over time. The trial court found that father's income would rise to $150,000 in his second year of employment. The trial court may, in its order, calculate father's child support obligations once his income reaches $150,000 to be effective at that time. Another option is to require the parties to recalculate child support yearly, or every two years, based on the Child Support Guidelines and updated income information. See *Harris v. Harris*, 168 Vt. 13, 15, 714 A.2d 626, 628 (1998) (affirming final divorce order in which child support obligation is to be recalculated every two years according to a method specified by the order, including a calculation to be applied when the parties' combined monthly gross income exceeds the incomes in the Child Support Guidelines).

receives all four dependency exemptions. We therefore reverse the trial court. Under the terms of the final divorce order, which we uphold, *infra* Part F, father is entitled to claim all four dependency exemptions.

## C

Father further contends that even accepting the monthly support figure arrived at by the trial court, the trial court miscalculated his support arrearage. He bases his argument on two grounds. First, he claims that the date of retroactive adjustment in child support was inappropriate given his financial situation and not based on adequate findings of fact. Father argues that the trial court lacked evidentiary support for its decision to set September 1, 2000 as the starting date for his modified child support obligations. Second, he claims the court erred in assessing his premodification support obligation. He argues that the applicable child support owed to mother during July and August of 2000 was not $7,500, as he believes the trial court ordered him to pay, but $1,540. Although the trial court fails to provide a breakdown for how it determined its past due child support calculation, we accept for purposes of this argument that father was ordered to pay $7,500 for the two months in question.

First we address father's claim that September 1, 2000 was not based upon adequate findings. Child support obligations may be modified as of "any reasonable date on or after the date of filing of the motion to amend the support order, within the sound discretion of the trial court." *Towne v. Towne*, 150 Vt. 286, 288, 552 A.2d 404, 405 (1988). Public policy supports setting the earliest date for the retroactive modification of child support at the date of filing a motion to modify because "[i]t is a readily discernible date which will place the other party on notice that a change in support may be forthcoming, and it eliminates any incentive to delay a resolution of the dispute for modification of support payments." *Id.* at 288, 552 A.2d at 406. Various factors influencing the circumstances of the parties subject to the order, however, could justify the use of a later date. *Chaker v. Chaker*, 155 Vt. 20, 30, 581 A.2d 737, 742 (1990). "The effective date for any modification in support [on or after the date of filing of a motion to modify] should be left to the sound discretion of the trial court, because it is most familiar with the often complicated history of the case and, thus, better able to make such a determination." *Towne*, 150 Vt. at 288, 552 A.2d at 406.

In *Towne*, the trial court found the applicable change in circumstances occurred on August 28, 1987, and defendant filed his motion to modify on September 8, 1987. However, the trial court set October 30, 1987 as the date for which retroactive modification of child support would commence. On review, this Court found: "The trial court stated no rationale and made no findings as to why it chose the October 30 date. While choosing such a date would be within the trial court's discretion, without any stated rationale or findings of fact on this issue, [w]e are left to speculate as to the basis upon which the trial court . . . reached its decision. This we will not do." *Id.* at 289, 552 A.2d at 406 (internal citations and quotations omitted).

■ As in *Towne*, the trial court in the case at bar does not offer any explanation for its choice of the date to which its child support order was made retroactive. Father started work on July 31, 2000, and he filed his petition to modify about a week later, on August 7, 2000. The trial court does not provide any rationale for why circumstances in August did not justify modification, while those in September did. We therefore remand for further findings of fact and reconsideration of the date upon which child support will be retroactively modified.

■ On the second objection that father raises, that the trial court incorrectly assessed his premodification support at a rate of $7,500 per month rather than $1,540 per month, the trial court opinion again lacks adequate findings to support its order. Determining which rate applied during the period in dispute requires an analysis of the legal effect of the stipulation between mother and father. The stipulation establishes that father's child support obligation and maintenance supplement during residency would be $1,540 per month, but that "[a]t the end of the chief residency year, when [father's] income as a physician is known, he shall pay one-half of his pre-tax income or $90,000 per year, whichever is greater as child support and maintenance supplement." The question is therefore how to apply this agreement to the months in dispute. According to father, between June 22 and July 31, father was unemployed and did not make any child support payments to mother. Father stated at trial that during this time he prepared and sat for his board certification exams. There are no findings of fact from the trial court on whether this is actually what father did, whether it would have been possible for father to work while preparing for the exam, and whether this one month period should be considered part of father's residency under the terms of the divorce stipulation or to have

occurred after the residency and therefore be subject to a new assessment.

Mother's motions filed during the month of July may provide some indication of the parties' understanding of the stipulation. On July 19, 2000, mother filed a motion to enforce child support obligations. In her motion, she demanded salary withholding from father at the $1,540 per month rate that applied to father during his residency. On the same day, she filed a petition to modify child support, demanding that father's payments be increased to $7,500 per month in accordance with the provision of the divorce stipulation that payment would increase to this level when father finished his residency.

Without further findings, we cannot determine what the impact of mother's petition is on father's premodification support obligation, or how the stipulation should be interpreted with respect to July, when father received no salary. We remand for further findings and clarification of the court's decision on this issue.

### D

Father further argues that the trial court violated federal law by ordering him to pay the Fleet credit card debt, a debt which father discharged in bankruptcy. At the time of the divorce, the card had a balance of $13,561, of which father paid $500 before filing for bankruptcy. Because mother was named as a joint creditor on the account, Fleet turned to mother for repayment. The trial court found that because of father's failure to pay off the Fleet credit card debt, mother's credit rating had suffered and she must pay lenders above average interest rates to obtain loans. According to mother's affidavit of income and expenses, she currently pays $262 per month on this $16,848 debt. The trial court ordered father to pay mother $13,000 plus interest and penalties that had accrued on the card, at a rate of $500 per month, until the debt is paid off.

We agree with father that the trial court erred in ordering father to pay mother the amount owed on the credit card after that debt had been discharged in bankruptcy. As this Court held in *Fitzgerald v. Fitzgerald*, 144 Vt. 549, 481 A.2d 1044 (1984), a case involving a property settlement obligation pursuant to a divorce decree that had been included as a debt on plaintiff's petition for bankruptcy, "[f]inal orders of a bankruptcy court are res judicata as to all matters that were or could have been litigated before that court. . . . The proper forum to litigate this issue is the bankruptcy court by way of a petition to reopen the debtor's estate, 11 U.S.C. § 350, or any other procedural

method available under the bankruptcy code." 144 Vt. at 552, 481 A.2d at 1046.

The trial court may not reinstate discharged debt by ordering father to pay mother the entire amount of debt in an award that is separate from its general maintenance and child support order. On remand, however, the trial court is not precluded from taking the fact that mother must now pay off the Fleet debt into account in calculating father's modified child support and maintenance obligations. Father's counsel cites two cases from the United States Bankruptcy Court of the District of Vermont, *In re Ladak*, 205 B.R. 709 (Bankr. D. Vt. 1997), and *In re Pearson*, Docket No. 00-1059 (Bankr. D. Vt. May 9, 2001), available at *http://www.vtb.uscourts.gov*, for the proposition that father's failure to pay debts discharged in bankruptcy can not be used as a reason to increase his support obligations to mother. While we agree that these cases prohibit the reinstatement of debt that has been discharged in bankruptcy, father's reading of the cases to preclude consideration of the fact that mother must now pay this debt in the determination of father's child support obligation is incorrect. In both cases, the bankruptcy court has emphasized that its decisions do not prevent family courts from considering changed financial circumstances as a result of a shift in debt load in determining new child support obligations. The court in *Ladak* found that the respondent violated the automatic stay provisions of the bankruptcy code by seeking a modification of a divorce decree, but concludes the opinion: "We caution against reading our holding as a case where the discharge of debts in bankruptcy may prohibit a state court from modifying a divorce decree concerning spousal maintenance or child support because of a material change in circumstances." 205 B.R. at 712. In the *Ladak* case, there was no ongoing maintenance or child support obligation from debtor to former spouse, unlike the instant case where father's support obligations to mother are continuous, and the *Ladak* court explicitly refrained from extending its holding to cases involving ongoing maintenance obligations.

*Pearson* is a similarly circumscribed holding. In *Pearson*, the court found as fact that the wife had *not* been financially harmed by the plaintiff-husband's failure to pay the joint credit cards: the wife had not been held liable for any of the discharged debt, and that the wife's motion for modification of maintenance was not based upon an actual change in circumstances. In the case before us today, the court has found that mother suffered financial harm from father's bankruptcy. The court may consider mother's ongoing payments on the Fleet

credit card as part of her changed financial circumstances and take these payments into account in calculating how much child support and maintenance she needs. This is in accordance with decisions in other jurisdictions upholding state court decisions to modify child support or maintenance obligations in response to the changed circumstances or needs of the parties. *Simpkins v. Simpkins*, 435 So. 2d 753, 754 (Ala. Civ. App. 1983) (holding that state court could order husband to pay temporarily an increased amount of child support because of wife's depressed financial condition as a result of having to pay loans that husband had discharged in bankruptcy; such order did not require husband to pay discharged debt); *Kruse v. Kruse*, 464 N.E.2d 934, 938 (Ind. Ct. App. 1984) (holding that state court did not infringe upon jurisdiction of bankruptcy court or order debtor-husband to pay any prebankruptcy petition debts when it decided to modify child support due to substantial and continuing change of circumstances); *In re Marriage of Trickey*, 589 N.W.2d 753, 757 (Iowa Ct. App. 1998) (if post-bankruptcy alimony modification "merely takes into account the fact that ... the discharge results in changed financial circumstances, then modification will not violate federal bankruptcy law").

We reverse the trial court's order that father pay mother the entire amount owed on the Fleet credit card. On remand for recalculation of father's child support obligation, the trial court may consider the debt that mother has been forced to assume as part of her overall financial circumstances.

## E

Father next asserts that the trial court abused its discretion by awarding attorney's fees to mother. The trial court ordered father to pay $15,000 of the more than $30,000 in attorney's fees mother incurred to bring this action. Father argues that the trial court predicated its award of attorney's fees to mother on the conclusion that she had substantially prevailed in the case, and that if the Court reverses the lower court's child support award, it should also reverse the lower court's award of attorney's fees.

We will reverse the award of attorney's fees, but not on the grounds suggested by father. In a case concerning child support, the question of which parent substantially prevails does not determine which parent pays. "The primary consideration in awarding attorney's fees is the ability of the supporting party to pay and the financial needs of the party receiving the award." *Nevitt v. Nevitt*, 155 Vt. 391, 399, 584 A.2d 1134, 1139 (1990); see also *Dunning v. Meaney*, 161 Vt. 287, 291,

640 A.2d 3, 6 (1993). The trial court and father rely on language from the stipulation requiring that, if a court determines that one party has breached the stipulation, the breaching party pay the nonbreaching party "attorney's fees, costs, and expenses incurred in attempting to enforce the provisions of the within Stipulation." The trial court opinion states that "[t]his complicated litigation would have been unnecessary if [father] had carefully considered his financial situation and financial needs prior to signing the stipulation, if he had assumed the credit card debt he had agreed to assume, and if he had paid [mother] the support ... due her." While the trial court clearly considered father responsible for the need to bring this litigation, it did not find that father had breached the stipulation. The court did grant father's motion to modify child support, ratifying father's claim that a departure from the terms of the stipulation was necessary under the circumstances. We reversed the trial court's award to mother of payment for father's credit card debt. The trial court found that father was living a "modest lifestyle." Father's position in this case is not that he does not want to comply with the stipulation that he signed, but that he is unable to do so because of circumstances not contemplated by the parties. We find that the record evidence does not support a finding of breach. Therefore we reverse and remand the issue of attorney's fees to the trial court to allocate attorney's fees on the basis of the relative capacities and needs of the parties, taking into account both father and mother's ability to pay.

F

Finally, father contends that the trial court erred in declining to grant his motion under V.R.C.P. 60(b)(6) to set aside the divorce order on the grounds that the order was impossible from the outset. He alleges that there is no way that he can comply with the terms of this order and keep up with his obligations to make student loan repayments, and that various other requirements established by the stipulation, such as paying for college for all four children, will be impossible for him given his current and foreseeable insolvency under the terms of the stipulation. We affirm the trial court's denial of the motion.

A motion under V.R.C.P. 60(b)(6) for relief from judgment to prevent hardship "is not subject to appellate review unless it clearly and affirmatively appears on the record that such discretion was withheld or abused." *Cliche v. Cliche*, 143 Vt. 301, 307, 466 A.2d 314, 316-17 (1983). We must accept the trial court's findings unless they are

clearly erroneous. *Slansky v. Slansky*, 150 Vt. 627, 629, 556 A.2d 94, 95 (1988). The trial court's decision to deny father's 60(b)(6) motion was entirely within its discretion. The trial court found that the stipulation was "negotiated over many months with the input of a mediator." The final form of the stipulation included terms more favorable to father than those found in earlier drafts. The court found father to be a highly intelligent, educated man, who was not subjected to any pressure or threats and had "every opportunity to read over the stipulation, ask questions, and obtain legal representation." He voluntarily signed the stipulation agreeing to a generous financial package for the benefit of his former wife and four children.

Interests of finality require that relief from a previous judgment should be granted only in extraordinary circumstances. *Riehle v. Tudhope*, 171 Vt. 626, 627, 765 A.2d 885, 887 (2000) (mem.). Moreover, in domestic relations matters, we assume that any agreement reached voluntarily by the parties is preferable to a court-imposed order. Therefore, although we recognize that Rule 60(b)(6) may be used, in some circumstances, to reopen a final judgment that incorporates an agreement, our standard is strict. *Id.* We agree with the trial court that father failed to demonstrate extraordinary circumstances warranting relief in this case. The record evidence does not support father's claim that the stipulation was impossible to fulfill from the outset. Father's income is currently much lower than the $200,000 per year that it is expected to reach. Aspects of this agreement that are difficult to carry out now may appear in a different light at a later time. While child support is always subject to modification, the stipulation is a comprehensive agreement between the parties covering many issues above and beyond child support. We find that the trial court neither abused nor withheld its discretion in declining to dispense with the entire stipulation on the basis of circumstances existing during a period of time early in father's career when the terms of the stipulation proved onerous.

*The Chittenden Family Court's order denying father's motion under V.R.C.P. 60(b) to set aside the divorce order is affirmed. The orders granting father's motion to modify present and future support obligations, ordering father to pay child support arrearage, reallocating dependency exemptions from father to mother, ordering father to pay mother a debt discharged in bankruptcy, and awarding attorney's fees to mother are reversed and remanded for proceedings consistent with this opinion.*