2006 VT 89

### Dawn ADAMSON (Dodge) v. Jeffrey DODGE

[910 A.2d 821]

No. 05-255

¶ 1. August 24, 2006. Father, Jeffrey Dodge, appeals the family court's denial of several motions related to the relocation of mother and custodial parent, Dawn Adamson. Father contests the denial of his request to enforce and find mother in contempt of a parent-child contact order; he opposes the award of mother's motion for modification of parent-child contact; and he challenges the denial of his request for fees and costs. We affirm.

¶ 2. The parties were divorced after eleven years of marriage. The divorce order gave mother sole physical rights and responsibilities concerning the par-

ties' four children subject to father's periodic visitation. The order provided the parties with shared legal rights and responsibilities regarding the children. A recitation of the facts that accompanied the divorce can be found in *Adamson v. Dodge*, 174 Vt. 311, 313-14, 816 A.2d 455, 458-59 (2002). The matters before us relate solely to events that occurred in the years following the divorce. In 2000, shortly after the divorce, father moved to Wisconsin to begin his medical career. He did so with the hope that mother would move the family to Wisconsin. *Id.* at 314, 816 A.2d at 459. Shortly after father's move, mother informed him that she was not moving to Wisconsin, a revelation that prompted father to give six-month notice of resignation only two weeks after starting his job. *Id.* at 315, 816 A.2d at 460. In December 2000, father returned to Plattsburgh, New York, where he purchased a home and joined a medical practice, anticipating that mother and the children would remain nearby in Vermont. In June 2003, however, mother and the children moved to Wisconsin in order to seek employment, be nearer to her family, and pursue a romantic relationship. The issues presently before the Court emanate from mother's relocation.

¶ 3. At the time of mother's move in June 2003, father and mother filed cross-motions to modify their parental rights and responsibilities. Father sought sole physical rights and responsibilities; mother sought sole legal rights and responsibilities. The court did not rule on the motions for more than eighteen months, but ultimately denied both in January 2005 on the grounds that mother's move was not a significant and unanticipated change of circumstances necessary to trigger modification pursuant to 15 V.S.A. § 668. Neither parent appealed this decision. In February and April of 2005, father filed two pro se motions relating to mother's move. The first

sought to enforce the existing parent-child contact order, and asked that the court find mother in contempt of the order due to her relocation to Wisconsin. Father also sought to compel mother to return to Vermont with the children. In response, mother filed a motion requesting that the court establish a new parent-child contact schedule in light of the parties' changed locations. Father thereafter filed a motion to recover fees and costs. On June 3, 2005, the family court ruled that it lacked authority to force a parent to move, and established a new, logistically feasible, parent-child contact order. Father's request for fees and costs was denied. This appeal followed.

¶ 4. We note at the outset that many of father's arguments on appeal are directed at the denial of his June 2003 motion to modify the parental rights and responsibilities order — a ruling he did not appeal at the time of the family court's January 2005 decision. In arguing that we should now consider the unappealed order, father contends that the court's denial of the cross-motions to modify was confusing, and that because he was unclear about the impact of the rulings, he did not appeal. We appreciate that the delay between the parties' filing and the court's denial of the motions may have exacerbated the confusion regarding the motion. However, we have a strong interest in finality, especially with respect to orders affecting the interests of children. If father did not understand the effect of the order denying both motions, he could have asked for clarification from the family court. Although we will not permit unfair advantage to be taken of a pro se litigant, it is not the obligation of the family court or this Court to offer affirmative help. *Nevitt v. Nevitt*, 155 Vt. 391, 401, 584 A.2d 1134, 1140 (1990). Having failed to timely appeal the denial of his motion regarding parental rights and responsibilities, fa-

ther has waived his right to now contest the result. *Stein v. Stein*, 173 Vt. 627, 628, 800 A.2d 460, 462 (2002) (mem.). Accordingly, the only issues before this Court are those raised in response to the family court rulings of June 3, 2005.

¶ 5. Father argues that the family court erred when it refused to order mother to return to Vermont to comply with the parent-child contact order in the parties' final divorce order. He contends that her return was the necessary consequence of the denial of her motion to modify parental rights and responsibilities. We disagree. The 2000 divorce order did not require that mother reside in Vermont. While the relocation of a custodial parent may be a ground to modify a preexisting parental rights and responsibilities order, it is not a sufficient ground to order that parent to return to this state. See *Lane v. Schenck*, 158 Vt. 489, 499, 614 A.2d 786, 791 (1992) (establishing that although visitation orders are meant to facilitate parent-child relationships, such orders "do not warrant nullification of the custodial parent's reasonable decisions" as to residence).

¶ 6. Father next challenges the family court's award of the new parent-child contact order consistent with mother's request. The previous parent-child contact order in the divorce decree was specific: father was entitled to visitation on two weekends per month, and if the parties resided more than ninety miles apart, the parent-child visitation schedule was to be "altered so that it does not interfere with the children's school life, performance attendance, activities, etc." Mother alleged in her motion to modify that the parties were unable to agree to a new schedule to reflect the parties' changed living arrangement. She therefore requested that the court order a new schedule, which the court did. On appeal father maintains that mother should be made to abide by the original terms of the parent-child contact order, and he opposes the existence, rather than any specific facet, of the modified order.

¶ 7. The family court acted within its discretion when it modified the parent-child contact order to account for the distance between the parties and the logistical dilemmas this distance presented. *Hawkes v. Spence*, 2005 VT 57, ¶ 20, 178 Vt. 161, 878 A.2d 273. As we explained in *Hawkes*:

> A relocation will frequently require modifying parent-child contact, regardless of whether the relocation amounts to a change of circumstances for custody purposes. The burden of showing changed circumstances with respect to a motion to alter parent-child contact is "not as high" as the heavy burden of showing changed circumstances with respect to a motion seeking a change of custody.

*Id.* Indeed, the original parent-child contact order in this case contemplated a relocation that would leave the parties over ninety miles apart. Since the mother's relocation, both parties acknowledged a breakdown in communication. The court's modification of the parent-child contact order attempted to minimize acrimony by establishing clear rules and diminishing the need to "negotiate." See *Gates v. Gates*, 168 Vt. 64, 68, 716 A.2d 794, 797 (1998) (finding that parents' toxic relationship warranted change in communication method rather than change in legal rights and responsibilities). Given the parties' respective locations, adherence to the existing parent-child contact order was impossible. Father now has extended visits during school vacations and holidays, which are both known in advance and convenient for the children. Visits between Wisconsin and New York require air travel, advanced planning, and increased parental cooperation, all of which enhance the

need for a structured process. We conclude that the modification order was reasonable and within the court's discretion.

¶ 8. Father also appeals the denial of his request for attorney's fees and costs. Though he now appears pro se, father was represented by counsel for a substantial period of time and seeks attorney's fees relating to the work performed during that period on the cross-motions to modify. Just as we cannot consider issues related to the denial of these motions due to father's failure to file a timely appeal, we cannot now award attorney's fees for work in connection with those motions. Nor can we award attorney's fees for pro se representation. See *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Additionally, the trial court reasonably denied father's request for costs because it found that neither party's position was frivolous. See *Bowman v. Ackerman*, 177 Vt. 589, 591-92, 865 A.2d 1120, 1123 (2004) (mem.) (upholding denial of costs when record reveals "at least a colorable basis" for the opposing party's claim).

*Affirmed.*

Motion for reargument denied October 3, 2006.